Filed 2/26/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARTHA CARBAJAL, | |
| Plaintiff and Respondent, | G050438 |
| v. | (Super. Ct. No. 30-2013-00675702) |
| CWPSC, INC., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Kim Garlin Dunning, Judge. Affirmed.

Ogletree, Deakins, Nash, Smoak & Stewart, Rafael G. Nendel-Flores and Seth E. Ort for Defendant and Appellant.

Trush Law Office, James M. Trush; Perona, Langer, Beck, Serbin, Mendoza & Harrison, Ellen R. Serbin, Todd H. Harrison and Brennan S. Kahn for Plaintiff and Respondent.

\*        \*        \*

Defendant and appellant CWPSC, Inc. (CW Painting) appeals the trial court's order denying its motion to compel its former employee, plaintiff and respondent Martha Carbajal, to arbitrate her wage and hour claims under the arbitration provision in her employment agreement. The trial court denied the motion because it found the arbitration provision was both procedurally and substantively unconscionable. We agree with the trial court.

The arbitration provision is procedurally unconscionable because it is part of an adhesion contract CW Painting imposed on Carbajal as a term of her employment. Moreover, although the arbitration provision required the parties to arbitrate their disputes under the American Arbitration Association's (AAA) rules, the provision did not identify which of AAA's many different rules would apply, CW Painting failed to provide Carbajal with a copy of the rules it believed applied, and CW Painting required Carbajal to sign the agreement without telling her where she could find the governing rules or giving her an opportunity to determine which rules would apply.

The arbitration provision is substantively unconscionable because it allows CW Painting to obtain injunctive relief in court while requiring Carbajal to seek relief through arbitration, it waives the statutory requirement that CW Painting post a bond or undertaking to obtain injunctive relief, and it effectively waives Carbajal's statutory right to recover her attorney fees if she prevails on her Labor Code claims.

Contrary to CW Painting's contention, the trial court was not required to sever these unconscionable terms and enforce the remainder of the arbitration provision. A trial court has discretion to deny enforcement of an arbitration agreement when the existence of multiple unconscionable terms permeates the entire agreement. The record supports the trial court's exercise of its discretion.

Finally, we reject CW Painting's contention the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA) governs. The party asserting the FAA bears the burden to show it applies by presenting evidence establishing the contract with the arbitration

2

provision has a substantial relationship to interstate commerce, but CW Painting failed to timely present such evidence.

## I

### FACTS AND PROCEDURAL HISTORY

CW Painting provides residential painting services for homeowners. It hires college students as "interns" to sell its services and manage its painting crews. In November 2011, Carbajal was a student at the University of California, San Diego when CW Painting made an on-campus solicitation for new interns. After the presentation, CW Painting accepted her into its internship program. During her interview, CW Painting asked Carbajal to sign the "2012 Season Employment Agreement – CWP Intern" (Agreement), but no one explained its provisions to her.

Under the heading "LET'S TALK IT OUT," the Agreement included an arbitration provision that required Carbajal and CW Painting "to submit any and all disputes to final and binding arbitration in accordance with the rules of the [AAA]." The arbitration provision had a class action waiver that required Carbajal to arbitrate any claims she asserted on an individual basis, and prohibited the arbitrator from "enter[ing] an award or otherwise provid[ing] relief on a class, collective or representative basis." The same paragraph also provided that Carbajal and CW Painting "specifically retain a right to appeal in a court of competent jurisdiction any determination or award of an arbitrator made in contravention of this section, including without limitation, a determination (i) that a claim may proceed as a class, collective, or representative action; or (ii) that awards relief on a class, collective, or representative basis. In such appeal, the standard of review to be applied to the arbitrator's decision shall be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury."

The arbitration provision further provided, "The costs of arbitration will be shared equally by [Carbajal] and [CW Painting]; however, if the law expressly requires

3

[CW Painting], as the employer, [to] bear the entire cost of arbitration then [CW Painting] will then pay the entire cost." Finally, the provision required Carbajal and CW Painting to be "responsible for your own attorneys' fees."

The Agreement also required Carbajal to keep CW Painting's trade secrets and other information confidential and required her to use that information exclusively for CW Painting's benefit. If Carbajal breached these obligations, the Agreement included a liquidated damages provision that required her to "pay to [CW Painting], immediately upon demand, the sum of ten thousand dollars ($10,000.00) per breach." The Agreement further provided that Carbajal "agrees that, in addition to the foregoing remedy, if [Carbajal] breaches any of [the confidentiality or exclusive use provisions, CW Painting] will have the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and a right to specific performance of any such provision of this Agreement. [Carbajal] further agrees that no bond or other security shall be required in obtaining such equitable relief." (Capitalization omitted.)

After attending an orientation and two-day training seminar, Carbajal began working for CW Painting in February 2012. In May 2012, CW Painting informed Carbajal it was missing some of her employment documents, including page two of the Agreement, which contained the arbitration, liquidated damages, and injunctive relief provisions described above. CW Painting e-mailed the documents to Carbajal, who signed and returned them to CW Painting as instructed.

Carbajal quit in August 2012, and filed this class action against CW Painting approximately a year later. The operative first amended complaint alleges the following clams on behalf of all similarly situated interns: (1) recovery of unpaid wages; (2) failure to provide meal periods; (3) failure to provide paid rest periods; (4) illegal deductions from wages; (5) failure to provide accurate itemized wage statements; (6) failure to compensate for business expenses; (7) failure to timely pay

4

wages upon separation; (8) "declaratory relief – fraud in inducement, void and unenforceable agreement"; and (9) unfair business practices. (Capitalization omitted.)

CW Painting asked Carbajal to submit her claims to arbitration on an individual basis as the Agreement required, but Carbajal refused and sent CW Painting a notice purporting to rescind the Agreement because CW Painting had never signed it. Based on Carbajal's refusal, CW Painting filed a motion to compel her to arbitrate her claims on an individual basis. CW Painting argued the Agreement was enforceable and governed by the FAA, which preempts all California statutes and case law invalidating class action waivers or otherwise limiting the enforceability of the parties' arbitration agreement.

Carbajal opposed the motion, arguing (1) no enforceable arbitration agreement existed because CW Painting never signed the Agreement; (2) the FAA does not apply because CW Painting failed to present any evidence showing the Agreement involved interstate commerce; (3) Labor Code section 229 invalidates any private agreement to arbitrate Labor Code claims for unpaid wages; and (4) the Agreement's arbitration provision is procedurally and substantively unconscionable. CW Painting filed a reply brief arguing the FAA applied because Carbajal's duties bore a substantial relationship to interstate commerce. In support, CW Painting submitted new declarations from one of its officers and a supplier stating many of the materials CW Painting used in its painting business were shipped from other states.

The trial court denied the motion. In its order, the court simply stated the motion was denied "on the basis that the court finds that the subject Employment Agreement is procedurally and substantively unconscionable." Neither party requested a statement of decision, and the trial court provided no further explanation of its ruling. This appeal followed.

5

## II

### DISCUSSION

A. *Standard of Review*

"'Unconscionability is ultimately a question of law for the court.' [Citations.] 'However, numerous factual issues may bear on that question. [Citation.] Where the trial court's determination of unconscionability is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence.' [Citation.] If there are no material conflicts in the evidence bearing on the issue of unconscionability, our review is de novo." (*The McCaffrey Group, Inc. v. Superior Court* (2014) 224 Cal.App.4th 1330, 1347 (*McCaffrey*); see *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 178 (*Serafin*).)

When a trial court denies a motion to compel arbitration, a party may request the court to provide a statement of decision explaining the factual and legal basis for its decision. (Code Civ. Proc., § 1291; *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970 (*Acquire II*); *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 687 ["the Legislature intended to require the trial court to issue a statement of decision, upon proper request under [Code of Civil Procedure] section 632, when denying a petition to compel arbitration"].) No statement of decision is required if the parties fail to request one. (*Acquire II*, at p. 970.)

"A party's failure to request a statement of decision when one is available has two consequences. First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision. Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence. [Citations.] This doctrine 'is a natural and logical

6

corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error.'" (*Acquire II*, *supra*, 213 Cal.App.4th at p. 970.) Here, neither CW Painting nor Carbajal requested a statement of decision.

Moreover, "[e]ven if the record demonstrates that the trial court misunderstood or misapplied the law, the ruling must be affirmed if it is supported by any legal theory. [Citation.] 'Because we review the correctness of the order and not the court's reasons, we will not consider the court's oral comments or use them to undermine the order ultimately entered.' [Citation.] If the decision itself is correct, there can be no prejudicial error from incorrect logic or reasoning." (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1201 (*Hoover*).)

B.      *CW Painting Failed to Establish the FAA Applies*

As a threshold matter, CW Painting contends the FAA governs the Agreement and the motion to compel arbitration. We disagree.

The FAA """"is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. . . ." . . . "[I]n enacting [the FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."""" (*Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1565, quoting *Perry v. Thomas* (1987) 482 U.S. 483, 489.)

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 344.) When it applies, the FAA preempts any state law rule that "'stands as an obstacle to the accomplishment of the FAA's objectives.'" (*Iskanian v.*

*CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384, quoting *AT&T Mobility*, at p. 343.)

The FAA applies to any "contract evidencing a transaction involving commerce" that contains an arbitration provision. (9 U.S.C. § 2; *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 657.) "[T]he phrase '"involving commerce"' in the FAA is the functional equivalent of the term '"affecting commerce,"' which is a term of art that ordinarily signals the broadest permissible exercise of Congress's commerce clause power." (*Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1097 (*Shepard*), citing *Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 55.) Accordingly, "although Congress's power to regulate commerce is broad, it does have limits. . . . [A] relatively trivial impact on interstate commerce cannot be used as an excuse for broad regulation of state or private activities." (*Shepard*, at p. 1099.)

Applying these principles, the United States Supreme Court has identified "three categories of activity that Congress may regulate under the commerce power: (1) the channels of interstate commerce, (2) the instrumentalities of interstate commerce and persons or things in interstate commerce, and (3) those activities having a substantial relation to interstate commerce." (*Shepard*, *supra*, 148 Cal.App.4th at p. 1098, citing *United States v. Lopez* (1995) 514 U.S. 549, 558-559.)

The party asserting FAA preemption bears the burden to present evidence establishing a contract with the arbitration provision affects one of these three categories of activity, and failure to do so renders the FAA inapplicable. (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 687 (*Lane*); *Hoover*, *supra*, 206 Cal.App.4th at p. 1207; *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 211 (*Woolls*); cf. *Shepard*, *supra*, 148 Cal.App.4th at p. 1101.)

For example, in *Lane*, an employee brought a wage and hour lawsuit and the defendant employer moved to compel arbitration under an arbitration agreement the

8

employee signed when she was hired. The employee opposed the motion, arguing Labor Code section 229 prevented enforcement of any agreement requiring an employee to arbitrate Labor Code wage and hour claims.[1] In response, the employer asserted the FAA preempted Labor Code section 229. (*Lane*, *supra*, 224 Cal.App.4th at pp. 680-682.) The *Lane* court rejected the employer's FAA preemption argument, explaining the employer failed to establish the contract affected interstate commerce because the employer failed to submit any declarations or other evidence showing the nature of the employer's business or the scope of the employee's work. (*Lane*, at p. 688; see *Woolls*, *supra*, 127 Cal.App.4th at pp. 213-214 [FAA did not apply because party asserting preemption failed to "present[] any *facts* to show the instant transaction involved interstate commerce"]; *Hoover*, *supra*, 206 Cal.App.4th at pp. 1207-1208 [same]; cf. *Shepard*, *supra*, 148 Cal.App.4th at pp. 1100-1101 [FAA applied because party asserting preemption presented evidence showing materials involved in transaction were shipped from other states].)

Here, CW Painting claimed the FAA applied, but it presented no evidence to establish any connection to interstate commerce. Indeed, CW Painting presented nothing about the nature of its business or Carbajal's work that showed any connection with interstate commerce. Carbajal's complaint shows she worked for CW Painting in California serving California customers. Accordingly, CW Painting failed to meet its burden to show the FAA applied.

CW Painting contends it had no burden to produce any evidence establishing an interstate commerce connection because Carbajal's opposition established that connection by admitting she made frequent phone calls to customers and used a facsimile machine to return the second copy of the Agreement she signed in May 2012.

---

[1] Labor Code section 229 states, "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate."

9

According to CW Painting, telephones are instruments of interstate commerce and establish the requisite connection with interstate commerce. To support this contention CW Painting cites two U.S. District Court cases, *Makarowski v. AT & T Mobility, LLC* (C.D.Cal. 2009) 2009 WL 1765661 (*Makarowski*), and *Maye v. Smith Barney Inc.* (S.D.N.Y. 1995) 897 F.Supp. 100 (*Maye*). We find this argument and these two nonprecedential cases unpersuasive.

In *Makarowski*, a customer sued her cell phone provider alleging a variety of consumer claims and the provider moved to compel arbitration based on an arbitration provision in the customer's contract. (*Makarowski*, *supra*, 2009 WL 1765661, *1.) In an unpublished decision, the District Court found the FAA applied and granted the motion. Without analysis, the court concluded the telephone services the defendant provided involved interstate commerce because "'telephones, even when used intrastate, are instrumentalities of interstate commerce.'" (*Makarowski*, at p. *3.)

*Makarowski* is readily distinguishable. The contract at issue in that case had a substantial relationship to interstate commerce because it involved using a channel or instrumentality of interstate commerce (the phone lines) to provide a service (cellular telephone service). In contrast, the Agreement does not have a substantial relationship to interstate commerce because its subject matter (residential painting services) does not involve a channel or instrumentality of interstate commerce and CW Painting failed to present evidence establishing any other substantial relationship to interstate commerce. Carbajal's intrastate use of a telephone to speak with some customers is at most a trivial connection to interstate commerce, especially where there is no other relationship between the Agreement and interstate commerce. (See *Shepard*, *supra*, 148 Cal.App.4th at pp. 1098-1099.)

*Maye* likewise is readily distinguishable. There, an assistant purchasing agent sued his employer, Smith Barney, for illegal discrimination. The District Court granted the employer's motion to compel arbitration based on the employee's arbitration

10

agreement.  (*Maye*, *supra*, 897 F.Supp. at pp. 102-104.)  The court concluded the FAA applied because the employer presented evidence showing the employee's duties included using the mail, telephones, and other instrumentalities of interstate commerce to receive and place orders across state lines.  (*Maye*, at p. 105.)  Here, there is no evidence showing Carbajal had any contact or involvement with anyone in another state.

As further support for the argument using phone lines, even intrastate, establishes the requisite connection to interstate commerce, CW Painting points to federal wire fraud statutes that make it a federal crime to use phone lines to commit certain frauds.  This argument misses the point.  Those federal statutes have the necessary connection to interstate commerce because they regulate a channel or instrumentality of interstate commerce by making it a crime to use the phone lines to commit certain frauds. In contrast, the FAA does not per se regulate channels or instrumentalities of interstate commerce but rather has the requisite connection to interstate commerce when the subject matter of a contract containing an arbitration agreement either involves a channel or instrumentality of interstate commerce or otherwise has a substantial relationship to interstate commerce.  The evidence here does not show painting a house involves a channel or instrumentality of interstate commerce, and simply using phone lines intrastate to follow up with customers is not a substantial relationship to interstate commerce.

CW Painting also contends it met its burden to show the FAA applied because it presented evidence with its reply brief showing many of the supplies Carbajal used to market and perform residential painting services were purchased and shipped from other states.  "The general rule of motion practice, which applies here, is that new evidence is not permitted with reply papers. . . .  '[T]he inclusion of additional evidentiary matter with the reply should only be allowed in the exceptional case . . .' and if permitted, the other party should be given the opportunity to respond."  (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-1538.)  Whether to accept new evidence with the reply papers is vested in the trial court's sound discretion, and we may reverse

the trial court's decision only for a clear abuse of that discretion. (*Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1308; see *Jay*, at p. 1538.)

Carbajal objected to the new evidence on this ground, and we presume the trial court sustained that objection because the court did not continue the hearing to allow Carbajal to respond and neither party requested a statement of decision. (See *Acquire II*, *supra*, 213 Cal.App.4th at p. 970 [appellate court must presume trial court made all findings necessary to support its decision when parties fail to request statement of decision].) CW Painting nonetheless contends it properly submitted the new evidence with the reply because Carbajal did not challenge the FAA's applicability until her opposition to the motion to compel. Not so. CW Painting's moving papers argued the FAA applied, and therefore it was required to present evidence to support its claim. The new evidence was not simply evidence responding to a new issue Carbajal raised; rather, it was evidence on an issue CW Painting raised, but failed to establish, in its moving papers.[2]

We conclude CW Painting did not meet its burden to show the FAA applied, and therefore its arguments the FAA preempts California statutes or case law lack merit.

---

[2] Along the same lines, CW Painting contends it was not required to present evidence with its moving papers to show the FAA applied because Carbajal's declaratory relief cause of action regarding the Agreement's enforceability did not put the FAA's applicability at issue. In support, CW Painting cites cases holding a party moving for summary judgment need only present evidence on the issues framed by the pleadings. (See, e.g., *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258 & fn. 7.) These cases are irrelevant. We are not presented with a summary judgment motion challenging whether a plaintiff can establish his or her causes of action. Instead, we are presented with a motion to compel Carbajal to submit her claims to contractual arbitration.

C.	*The Trial Court Properly Found the Arbitration Agreement to be Unconscionable*

1.	The Unconscionability Doctrine

"'Unconscionability is a judicially created doctrine, which the Legislature codified in 1979.'" (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1280.) Civil Code section 1670.5 provides, "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).) The doctrine applies to arbitration agreements, even those governed by the FAA. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 912 (*Sanchez*); *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1469 (*Peng*).)

"Unconscionability has procedural and substantive aspects. [Citation.] 'Both procedural and substantive unconscionability must be present before a court can refuse to enforce an arbitration provision based on unconscionability. However, the two elements need not be present in the same degree.' [Citation.] Courts use a '"sliding scale"' approach in assessing the two elements. [Citation.] 'In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 655-656 (*Abramson*); see *Serafin*, *supra*, 235 Cal.App.4th at p. 178; *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 702-703 (*Serpa*).)

This sliding scale approach "requires a court to examine the totality of the agreement's substantive terms as well as the circumstances of its formation to determine whether the overall bargain was unreasonably one-sided." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1146 (*Sonic*).) "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant

13

circumstances, that a court should withhold enforcement." (*Sanchez*, *supra*, 61 Cal.4th at p. 912.)

2. Procedural Unconscionability

Carbajal contends the Agreement's arbitration provision is procedurally unconscionable because it is an adhesion contract that fails to identify which of AAA's many different rules govern the arbitration. Carbajal also asserts CW Painting failed to provide her with a copy of the governing rules or give her an opportunity to review any rules before requiring her to sign the Agreement. We agree these factors make the Agreement unconscionable.

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle Museum Tower*).) """"""Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. . . .  Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position.""""""" (*Serpa*, *supra*, 215 Cal.App.4th at p. 703.)  "[P]rocedural unconscionability requires either oppression or surprise." (*McCaffrey*, *supra*, 224 Cal.App.4th at p. 1349, italics omitted; see *Abramson*, *supra*, 115 Cal.App.4th at p. 663.)  Both are not required.

"It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." (*Serpa*, *supra*, 215 Cal.App.4th at p. 704; see *Sanchez*, *supra*, 61 Cal.4th at p. 915 ["the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability"].)  As the Supreme Court repeatedly has explained, "in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may

14

be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 115 (*Armendariz*); *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071; see *Sanchez*, *supra*, 61 Cal.4th at p. 919.)

The Agreement and its arbitration provision therefore contain at least some degree of procedural unconscionability because it is undisputed the Agreement is an adhesion contract in the employment context. CW Painting was an employer with superior bargaining power and the arbitration provision is part of a standardized, preprinted form CW Painting requires all of its interns to sign. Carbajal had to sign the Agreement if she wanted to work for CW Painting. Indeed, after she had started working, Carbajal received a phone call from CW Painting informing her some of the paperwork required for her to continue working was missing, including page two of the Agreement (which includes the arbitration provision), and she must sign and return a new copy. To establish procedural unconscionability, Carbajal was not required to show she attempted to negotiate the terms of the Agreement because the imbalance of bargaining power is apparent from the relationship between the parties. CW Painting was an employer and Carbajal was one of many college students seeking a job with CW Painting; she was not a highly sought-after employee. (See *Sanchez*, *supra*, 61 Cal.4th at p. 914 ["in the context of consumer contracts, we have never required, as a prerequisite to finding procedural unconscionability, that the complaining party show it tried to negotiate standardized contract provisions"].)

By itself, CW Painting's Agreement and arbitration provision establish only a modest degree of procedural unconscionability. (*Serpa*, *supra*, 215 Cal.App.4th at p. 704 ["When . . . there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low'"].) The Agreement's procedural unconscionability, however, rises to a moderate level because the Agreement

15

requires Carbajal to arbitrate her claims "in accordance with the rules of the [AAA]" without identifying which of AAA's nearly 100 different sets of active rules will apply. Before requiring Carbajal to sign the Agreement, CW Painting did not provide Carbajal a copy of the rules it thought would govern, tell her where she could find a copy of the rules, offer to explain the arbitration provision, or give her an opportunity to review any rules.[3]  Moreover, when Carbajal deposed CW Painting's person most knowledgeable about the Agreement and its arbitration provision, the designated person could not identify which set of AAA rules applied even when he was provided with a list of AAA's active and archived rules.

"'Numerous cases have held that the failure to provide a copy of the arbitration rules to which the employee would be bound, supported a finding of procedural unconscionability.'" (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1146 (*Samaniego*); *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393-394 (*Trivedi*); see *Carlson v. Home Team Pest Defense, Inc.*

---

[3]  The evidence is conflicting and ambiguous on whether CW Painting required Carbajal to sign the Agreement during her interview or she merely chose to do so.  CW Painting's Vice President Derek Jorgensen declared he interviewed Carbajal on November 21, 2011, reviewed the Agreement and its arbitration provision with her, and gave her the option to sign and return the Agreement later, but she chose to sign the Agreement during the interview.  Jorgensen, however, testified at his deposition that he did not specifically recall interviewing Carbajal.  Carbajal declared a woman named Tiffany interviewed her, not Jorgensen, because he was interviewing another student at the time.  Carbajal asserted no one explained the Agreement's arbitration provision to her before requiring her to sign it.

We must resolve all conflicts in the evidence and draw every reasonable inference to support the trial court's ruling.  (*McCaffrey*, *supra*, 224 Cal.App.4th at p. 1347.) Because neither side requested a statement of decision, we also must presume the court made all necessary findings supported by substantial evidence.  (*Acquire II*, *supra*, 213 Cal.App.4th at p. 970.)  We therefore presume the trial court found CW Painting required Carbajal to sign the Agreement at the time of her interview without explaining it to her or giving her the opportunity to identify and review the governing AAA rules.

16

(2015) 239 Cal.App.4th 619, 631-633 (*Carlson*); *Carmona v Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 84-85 (*Carmona*); *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 485-486 (*Zullo*).) As each of these cases explained, the failure to provide a copy of the governing rules "contributes to oppression because the employee 'is forced to go to another source to find out the full import of what he or she is about to sign and must go to that effort *prior* to signing.'" (See, e.g., *Carmona*, at p. 84.) The level of oppression is increased when, as here, the employer not only fails to provide a copy of the governing rules, but also fails to clearly identify which rules will govern so the employee could locate and review them. (See *Zullo*, at p. 486, fn. 3 ["oppressive nature of the agreement" increased because AAA rules identified in arbitration agreement did not exist]; *Carlson*, at p. 633 ["the failure to disclose the terms of arbitration and the applicable rules also constitute surprise"].)

CW Painting contends "recent California Court of Appeal opinions have rejected the notion that a failure to attach the AAA rules creates procedural unconscionability." (See *Lane*, *supra*, 224 Cal.App.4th at pp. 691-692; *Peng*, *supra*, 219 Cal.App.4th at p. 1472; *Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 737 (*Bigler*).) CW Painting overstates the holding of these opinions, and they nonetheless are distinguishable.

In *Lane*, the Court of Appeal concluded the failure to attach a copy of the governing AAA rules did not render the arbitration agreement procedurally unconscionable because the rules were available on the Internet, the employee was a sophisticated business person with the capacity to locate the rules, and the arbitration agreement "clearly specified a particular set of AAA rules" without modifying them. (*Lane*, *supra*, 224 Cal.App.4th at pp. 691-692.) None of those factors are present here. Although AAA's rules are available online, Carbajal could not access them before signing the Agreement because she was not given time to do so and CW Painting did not "clearly specif[y]" which set of rules governed. Regardless, it is patently unreasonable

17

for CW Painting to claim Carbajal could have obtained the applicable rules from AAA when CW Painting's person most knowledgeable about the Agreement and arbitration provision could not identify which set of AAA rules applied. Moreover, Carbajal was a college student, not a sophisticated business person.

Similarly, in *Peng*, the Court of Appeal concluded "the failure to attach the AAA rules, *standing alone*, [was an] insufficient ground[] to support a finding of procedural unconscionability" because the employee opposing arbitration did not "identify any feature of the AAA rules that [would] prevent fair and full arbitration." (*Peng*, *supra*, 219 Cal.App.4th at p. 1472, italics added.) Here, CW Painting's failure to provide a copy or even identify the governing rules is not the sole basis for finding the agreement to be procedurally unconscionable; it is merely one factor contributing to that conclusion. Moreover, the employer in *Peng* gave the employee 25 days to review the arbitration agreement, but CW Painting had Carbajal sign the Agreement during her interview. Neither *Peng* nor CW Painting explains how requiring an employee to sign an arbitration agreement without disclosing all of its terms does not amount to both oppression and surprise.

Finally, contrary to CW Painting's contention, *Bigler* supports the conclusion that CW Painting's failure to provide a copy or otherwise identify the governing AAA rules contributed to the Agreement's procedural unconscionability. In *Bigler*, the Court of Appeal acknowledged the failure to provide a copy of the governing AAA rules was a factor contributing to procedural unconscionability, but concluded it was "of minor significance to our analysis" because the contract at issue was not an adhesion contract and the plaintiff seeking to avoid arbitration could have negotiated the arbitration provision. (*Bigler*, *supra*, 213 Cal.App.4th at p. 737.) Those facts are not present here.

CW Painting contends its failure to specify which set of AAA's rules would apply does not render the arbitration provision procedurally unconscionable because

18

AAA's "Employment Arbitration Rules and Mediation Procedures" clarify any ambiguity by stating they govern all employment disputes unless the parties' arbitration agreement specifies another set of rules. We disagree. The question is not whether the Agreement's arbitration provision is ambiguous. Rather, the question is whether the failure to provide a copy of or otherwise designate the governing rules amounts to surprise or oppression so as to create some degree of procedural unconscionability.

The two cases CW Painting cites to support its contention are readily distinguishable. These cases relied on similar provisions in other alternative dispute rules to resolve conflicts over which version of a particular set of rules applied, for example, the 2000 or the 2002 version of the same rules. Neither case was called upon to determine whether the underlying arbitration provision was procedurally unconscionable for failing to designate the governing rules. (See *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 158; *Lucas v. Gund, Inc.* (2006) 450 F.Supp.2d 1125, 1131-1132.) To support its theory, CW Painting would have had to identify the Employment Arbitration Rules and Mediation Procedures as the governing rules at some point, but CW Painting's person most knowledge conceded even he did not know which AAA rules applied under the Agreement's arbitration provision.

Accordingly, we conclude the Agreement has a moderate level of procedural unconscionability based on its adhesive nature, the employment context in which it arose, its failure to identify the governing AAA rules, and CW Painting's failure to provide Carbajal with a copy of the governing rules or the opportunity to review any rules before she was required to sign the Agreement. (Cf. *Serafin*, *supra*, 235 Cal.App.4th at pp. 179-181 [adhesive arbitration provision in employment agreement gave rise to only minimal degree of procedural unconscionability because agreement identified governing AAA rules and informed employee where to obtain copy].)

19

3.      Substantive Unconscionability

Carbajal contends the Agreement is substantively unconscionable because it (1) allows CW Painting to seek injunctive relief in court while limiting her relief to arbitration; (2) allows CW Painting to obtain injunctive relief without posting a bond or other security; (3) waives her statutory right to recover attorney fees if she prevails on her Labor Code claims; and (4) provides CW Painting a unilateral right to appeal any relief or determination an arbitrator makes in contravention of the Agreement's class action waiver. We agree the first three of these characteristics renders the Agreement's arbitration provision substantively unconscionable.

"The substantive element of unconscionability 'pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' [Citation.] This includes consideration of the extent to which the disputed term is outside the reasonable expectation of the nondrafting party or is unduly oppressive." (*McCaffrey*, *supra*, 224 Cal.App.4th at pp. 1349-1350; see *Zullo*, *supra*, 197 Cal.App.4th at p. 484 ["A contractual term is substantively suspect if, viewed at the time the contract was formed, it allocates the risks in an unreasonable or unexpected manner"]; *Serpa*, *supra*, 215 Cal.App.4th at p. 703.)

"It has long been recognized that substantive unconscionability is not susceptible to 'precise definition'" (*Sonic*, *supra*, 57 Cal.4th at p. 1163), and therefore our courts have used a wide variety of expressions to describe contractual provisions that are substantively unconscionable, including "'"""overly harsh"""'" [citation], "'unduly oppressive'" [citation], "'so one-sided as to "shock the conscience"'" [citation], or "unfairly one-sided" [citation]'" (*Sanchez*, *supra*, 61 Cal.4th at pp. 910-911). Our Supreme Court recently clarified that "these formulations . . . all mean the same thing." (*Id*. at p. 911.) The essential notion they each capture is "'that unconscionability requires a substantial degree of unfairness beyond "a simple old-fashioned bad bargain."'" (*Ibid*., italics omitted; see *Sonic*, at p. 1145 ["the unconscionability doctrine is concerned not

20

with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party'"].)

A contractual provision is not substantively unconscionable simply because it provides one side a greater benefit. The party with the greater bargaining power is permitted to require contractual provisions that provide it with additional protections if there is a legitimate commercial need for those protections, but the stronger party may not require additional protections merely to maximize its advantage over the weaker party. (*Sanchez*, *supra*, 61 Cal.4th at pp. 911-912; *Armendariz*, *supra*, 24 Cal.4th at pp. 117-118; see *Carmona*, *supra*, 226 Cal.App.4th at pp. 85-86.) "As has been recognized '"unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it."'" (*Armendariz*, at pp. 117-118; see *Carmona*, at p. 86.)

"Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.' . . . If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage." (*Armendariz*, *supra*, 24 Cal.4th at pp. 117-118; see *Carmona*, *supra*, 226 Cal.App.4th at p. 86.)

Applying these standards, courts repeatedly have found an employer-imposed arbitration agreement to be substantively unconscionable when it requires the employee to arbitrate the claims he or she is mostly likely to bring, but allows the employer to go to court to pursue the claims it is most likely to bring. (*Carlson*, *supra*, 239 Cal.App.4th at p. 634; *Serafin*, *supra*, 235 Cal.App.4th at p. 181; *Carmona*, *supra*, 226 Cal.App.4th at p. 87.)

21

For example, in *Trivedi*, the employer-imposed arbitration provision required both the employee and the employer to submit all claims between them to arbitration, but included a carve-out provision that allowed either party to seek injunctive relief in court. Although on its face the provision applied to both the employer and the employee, the *Trivedi* court found it to be substantively unconscionable because its effect was to exclude from arbitration only claims the employer was likely to bring. As the Court of Appeal explained, "it is far more likely" the employer will seek injunctive relief in court to stop an employee from breaching a nondisclosure or noncompetition agreement than the employee will seek injunctive relief in aid of his or her claims for wrongful termination, illegal discrimination, or unpaid wages. (*Trivedi*, *supra*, 189 Cal.App.4th at pp. 396-397; see *Carlson*, 239 Cal.App.4th at pp. 634-635 [arbitration agreement substantively unconscionable because it included carve-out provision allowing employer to seek injunctive and other equitable relief in court]; *Samaniego*, *supra*, 205 Cal.App.4th at pp. 1147-1148 [same]; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th at p. 115 [same]; *Abramson*, *supra*, 115 Cal.App.4th at p. 665 [same]; *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 176 [same].)

Here, the Agreement is substantively unconscionable on its face because it requires Carbajal to arbitrate "any and all disputes" she has with CW Painting, but it authorizes CW Painting to "obtain an injunction from a court of competent jurisdiction" to restrain Carbajal from breaching the Agreement's nondisclosure and exclusive use provisions. CW Painting offers no justification for this blatantly one-sided provision.[4]

_____

[4] Carbajal contends the same paragraph of the Agreement that contains the injunctive relief carve-out also includes carve-outs allowing CW Painting to recover liquidated damages and seek specific performance in court. We do not read the paragraph that broadly. Although the paragraph authorizes CW Painting to recover liquidated damages if Carbajal breaches her nondisclosure and exclusive use obligations, and also allows CW Painting to seek specific performance of those same provisions, the paragraph does not state it may seek those remedies in court. In contrast, the paragraph

22

(See *Zullo*, *supra*, 197 Cal.App.4th at p. 487 ["If an employer does have reasonable justification for a one-sided arrangement, the lack of mutuality would not be unconscionable. But without such justification, 'we must assume that it is'"].)

Rather than justify the injunctive relief carve-out provision, CW Painting contends the arbitrator must decide whether Carbajal's objection has merit, not the court on a motion to compel arbitration. According to CW Painting, Carbajal's objection challenges the enforceability of the Agreement as a whole because the injunctive relief carve-out is set forth in a separate section of the Agreement apart from the arbitration provision. (See *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 774.) We are not persuaded. Carbajal does not dispute or challenge CW Painting's right to seek injunctive relief to stop an actual or threatened breach of the Agreement's nondisclosure or exclusive use provisions. Instead, Carbajal contends the carve-out provision allowing CW Painting to seek that relief in court while she is required to seek all relief from an arbitrator is substantively unconscionable. The foregoing authorities support that contention.

CW Painting also contends the injunctive relief carve-out is not substantively unconscionable because it does not provide CW Painting with any rights beyond those already granted to both CW Painting and Carbajal by the California Arbitration Act (Code Civ. Proc., § 1280 et seq.). According to CW Painting, Code of Civil Procedure section 1281.8 allows it to seek injunctive relief from a court "both before and while arbitration is pending," and therefore the carve-out provision grants CW Painting no new rights. (Italics omitted.) The injunctive relief carve-out provision, however, allows CW Painting to seek broader relief in court than the cited code section. Code of Civil Procedure section 1281.8, subdivision (b), only authorizes a party to an

states CW Painting "will have the right to obtain an injunction *from a court of competent jurisdiction.*" (Italics added.)

23

arbitration agreement to seek a *preliminary* injunction or other provisional remedy "upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." In contrast, the injunctive relief carve-out broadly authorizes CW Painting to seek any type of injunctive relief in court, including a permanent injunction.

The injunctive relief carve-out provision creates further substantive unconscionability because it waives the requirement that CW Painting post a bond to obtain an injunction or other equitable relief. Although a bond is not required to obtain a permanent injunction following a judgment on the merits (*Shahen v. Superior Court* (1941) 46 Cal.App.2d 187, 189), Code of Civil Procedure section 529 requires a party seeking a preliminary injunction to post a bond or other undertaking to cover any damages the enjoined party may suffer if it later is determined the injunction was erroneously granted (*ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 10). "[A preliminary] injunction does not become effective until an undertaking is required and furnished." (*Ibid.*) An arbitration provision lacks mutuality and is substantively unconscionable when it authorizes the stronger party to obtain injunctive relief without establishing all of the essential elements for the issuance of an injunction. (See *Carmona*, *supra*, 226 Cal.App.4th at p. 89 [arbitration provision was substantively unconscionable because it allowed employer to obtain injunctive relief without establishing irreparable harm].)

The Agreement's arbitration provision also is substantively unconscionable because it requires the parties to bear their own attorney fees, but many of Carbajal's statutory wage claims would entitle her to recover her attorney fees if she prevails. (See Lab. Code, §§ 218.5, subd. (a) [attorney fees recoverable in successful action for nonpayment of wages]; 226, subd. (e) [attorney fees recoverable in successful action for failure to provide itemized wage statement]; 1194, subd. (a) [attorney fees recoverable in successful action for minimum and overtime wages]; 2802 [attorney fees recoverable in

24

successful indemnity action for reimburse of business expenses].)  At a minimum, Carbajal would be entitled to recover her attorney fees if she prevailed on her first cause of action for unpaid wages, fourth cause of action for illegal deductions from wages, fifth cause of action for failure to provide accurate itemized wage statements, and sixth cause of action for failure to compensate for business expenses.  (See *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1248 [Lab. Code §§ 218.5 & 1194 do not authorize employees to recover attorney fees on claims for failure to provide meal and rest periods].)

Several courts have held an arbitration provision is substantively unconscionable when it purports to deprive an employee of his or her statutory right to recovery attorney fees if the employee prevails on a Labor Code claim for unpaid wages and other benefits, or on a discrimination claim under the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.; FEHA).  (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 799-800 (*Ajamian*) [arbitration provision substantively unconscionable because it stripped employee of right to recover attorney fees on Lab. Code claims and potentially required employee to pay employer's attorney fees]; *Serafin*, *supra*, 235 Cal.App.4th at pp. 183-184 [arbitration provision substantively unconscionable because it required employer and employee to bear own attorney fees and thereby denied employee statutory right to recover attorney fees if she prevailed on FEHA claims]; *Serpa*, *supra*, 215 Cal.App.4th at pp. 709-710 [same]; see also *Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1249; *Trivedi*, *supra*, 189 Cal.App.4th at pp. 394-395.)

CW Painting contends this provision on attorney fees is not substantively unconscionable because the Agreement's arbitration provision also provides, "The arbitrators will be entitled to award all types of relief that would otherwise be available to the parties in a court proceeding under State or Federal law."  According to CW Painting, the rules of contractual interpretation require us to read these two provisions together so

25

as to require each party to be responsible for their own attorney fees unless a statute otherwise allows the prevailing party to recover its attorney fees. (See Civ. Code, §§ 1643, 3541.) We disagree and find this proffered interpretation to be contrary to the parties' intent as expressed in the arbitration provision's clear and unambiguous language. (See *Boston LLC v. Juarez* (2015) 240 Cal.App.4th Supp. 28, 34 ["'[i]f contractual language is clear and explicit, it governs'"].)

The arbitration provision's plain language requires the parties to be responsible for their own attorney fees without any exceptions. Nothing in the provision's language suggests the parties intended to limit or qualify this provision by also granting the arbitrators broad authority to award all types of relief authorized by law. "[W]hen there are conflicting clauses the more specific clause controls the more general." (*Rebolledo v. Tilly's, Inc.* (2014) 228 Cal.App.4th 900, 920.) CW Painting may not avoid the consequences of its deliberate choice to limit its employees' statutory right to attorney fees by advancing an interpretation contrary to the plain language of the arbitration agreement it drafted. Indeed, other courts have rejected similar arguments seeking to avoid the conclusion that an arbitration provision that alters a party's statutory right to attorney fees is substantively unconscionable. (*Serpa*, *supra*, 215 Cal.App.4th at pp. 709-710 [rejecting contention arbitration provision was not substantively unconscionable because arbitrator could reject plain language of term requiring parties to bear their own attorney fees and instead award fees consistent with FEHA]; *Trivedi*, *supra*, 189 Cal.App.4th at pp. 395-396 [rejecting contention that arbitration provision was not substantively unconscionable because AAA rules allowed arbitrator to award attorney fees consistent with applicable law despite contrary term in arbitration provision].)

To support its contention to the contrary, CW Painting cites an unpublished U.S. District Court case that fails to address any of the foregoing California state court decisions. (*Fouts v. Milgard Mfg.* (N.D.Cal. 2012) 2012 WL 1438817, *4.) Instead, the

*Fouts* court cites a single California case for the following proposition: "A provision that both sides bear the cost of their own attorney's fees 'merely restates the "American rule" of general applicability' and 't[akes] nothing away from' either party." (*Ibid.*, quoting *Woodside Homes of Cal., Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 731.) *Woodside*, however, did not involve a party with a statutory right to recover attorney fees, and therefore it does not support the *Fouts* court's conclusion that a provision requiring the parties to bear their own attorney fees did not substantively harm a party who had a statutory right to attorney fees. We decline to follow *Fouts*.[5]

Carbajal contends the Agreement's arbitration provision also is substantively unconscionable because it grants CW Painting a unilateral right to appeal if the arbitrator awards class relief in contravention of the provision's class action waiver. CW Painting responds the appeal term is not unconscionable because it grants both Carbajal and CW Painting the right to appeal any ruling or decision the arbitrator makes in contravention of the arbitration provision's terms. We need not resolve this dispute

---

[5] CW Painting also cites *Pinnacle Museum Tower*, claiming it stands for the proposition that "[a] provision stating that each side would bear their own attorney fees and costs [was] not unconscionable w[h]ere [an] agreement also provided that the arbitrator 'is authorized to provide all recognized remedies available at law or in equity for any cause of action.'" CW Painting overstates the holding. *Pinnacle Museum Tower* was a construction defect action by a homeowners association against a developer. (*Pinnacle Museum Tower*, *supra*, 55 Cal.4th at pp. 231-233.) The governing CC&R's included an arbitration provision that required each side to "'bear its own attorney's fees and costs (including expert witness costs) in the arbitration.'" The association claimed this provision was substantively unconscionable because it prevented the association from recovering the full measure of its damages by forcing it to bear its own expert witness costs. The Supreme Court rejected this argument, explaining this provision simply addressed costs by requiring each side to bear its own expert witness costs in the arbitration. It did not prevent the association from recovering expert fees it incurred to investigate the construction defects and that would be recoverable as damages under the governing law. (*Id*. at p. 249.) *Pinnacle Museum Tower* in inapplicable because it did not involve the impact of an attorney fee provision on a statutory right to recover attorney fees as a prevailing party.

27

because the appeal term does not render the arbitration provision substantively unconscionable even if we adopt Carbajal's interpretation.

Under Carbajal's interpretation the term simply grants CW Painting a right it already has. Code of Civil Procedure section 1286.2 requires a court to vacate an arbitration award if the court determines the arbitrator exceeded his or her powers and the award cannot be corrected without affecting the merits of the decision. An arbitrator exceeds his or her powers when granting a remedy expressly forbidden by the parties' arbitration agreement. (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1055-1056, 1061 [trial court erred in failing to vacate arbitration award that ordered defaulting partners in a partnership dispute to forfeit their capital accounts when partnership agreement prohibited such relief].) Here, the arbitration provision states, "the arbitrator shall have no authority or jurisdiction to enter an award or otherwise provide relief on a class, collective or representative basis." If the arbitrator awarded any form of class relief, CW Painting would be entitled to challenge the award in court and have it set aside regardless of whether the Agreement's arbitration provision included the appeal term Carbajal challenges. The appeal term therefore does not increase the arbitration provision's substantive unconscionability.

Based on the injunctive relief carve-out provision, the waiver of the injunction bond requirement, and the waiver of Carbajal's statutory right to recover attorney fees on her Labor Code claims, we conclude the Agreement's arbitration provision presents a moderate level of substantive unconscionability. When that substantive unconscionability is combined with the moderate level of procedural unconscionability discussed above, the Agreement's arbitration provision is unenforceable. (See *Trivedi*, *supra*, 189 Cal.App.4th at pp. 392-397 [arbitration provision unenforceable based on procedural unconscionability arising from adhesive nature of agreement as mandatory part of employment relationship and employer's failure to provide copy of governing AAA rules, and substantive unconscionability

28

arising from provisions authorizing only employer to seek injunctive relief in court and limiting employee's statutory right to recover attorney fees].)

D.    *The Trial Court Did Not Abuse Its Discretion in Declining to Sever the Unconscionable Provisions*

CW Painting contends the trial court erred by refusing to sever the terms it found to be substantively unconscionable. According to CW Painting, the court should have enforced the Agreement's arbitration provision after severing any unconscionable terms. We disagree.

Under Civil Code section 1670.5, subdivision (a), a trial court has discretion to "'refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results.'" (*Armendariz*, *supra*, 24 Cal.4th at p. 122; see *Carlson*, *supra*, 239 Cal.App.4th at p. 639.)

"'An employment arbitration agreement can be considered permeated by unconscionability if it "contains *more than one* unlawful provision. . . . Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage."'" (*Ajamian*, *supra*, 203 Cal.App.4th at p. 803; see *Carlson*, *supra*, 239 Cal.App.4th at p. 639.) "'"The overarching inquiry is whether '"the interests of justice . . . would be furthered"' by severance."'" (*Carlson*, at p. 639; *Carmona*, *supra*, 226 Cal.App.4th at p. 90.)

Here, the Agreement contains three substantively unconscionable terms: the injunctive relief carve-out, the waiver of the injunction bond requirement, and the waiver of Carbajal's statutory right to recover attorney fees on her Labor Code claims. These provisions support the finding the Agreement's arbitration provision was permeated with unconscionability, and therefore we conclude the trial court did not abuse

29

its discretion by refusing to sever these terms and enforce the remainder of the arbitration provision. (See, e.g., *Armendariz*, *supra*, 24 Cal.4th at p. 124 [no abuse of discretion in refusing to sever where two aspects of arbitration agreement were substantively unconscionable]; *Trivedi*, *supra*, 189 Cal.App.4th at pp. 397-398 [same].) In *Trivedi*, the Court of Appeal reached the same conclusion based on substantively unconscionable terms that were virtually identical to those present here. (*Trivedi*, at pp. 397-398 [trial court did not abuse discretion in refusing to sever arbitration agreement's substantively unconscionable terms that allowed only employer to seek injunctive relief in court and limited employee's statutory right to recover attorney fees on Lab. Code wage and hour claims].)

Because we affirm the trial court's ruling based on unconscionability, we do not address Carbajal's additional contentions that Labor Code section 229 precludes arbitration of her Labor Code claims, and CW Painting cannot enforce the Agreement because CW Painting never signed it.

### III

#### DISPOSITION

The order is affirmed. Carbajal shall recover her costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.


30