Filed 4/19/23; Certified for Publication 5/10/23 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| JENNIFER PLAYU ALBERTO, | B314192 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV41466) |
| v. | |
| CAMBRIAN HOMECARE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Atkinson, Andelson, Loya, Ruud & Romo, Amber S. Healy, Neil M. Katsuyama, and Lauren D. Fierro, for Defendant and Appellant.

Bibiyan Law Group, David D. Bibiyan, and Diego Aviles, for Plaintiff and Respondent.

# INTRODUCTION

Jennifer Playu Alberto, the respondent, is a former employee of appellant Cambrian Homecare. When she was hired, Alberto signed a written arbitration agreement.

Alberto brought wage-and-hour claims against Cambrian. Cambrian petitioned for arbitration. The trial court denied the petition. The trial court found that even if the parties had formed an arbitration agreement, the agreement had unconscionable terms, terms that so permeated the agreement they could not be severed.

We affirm. The agreement, read together—as it must be—with other contracts signed as part of Alberto's hiring, contained unconscionable terms. The trial court had discretion to not sever the unconscionable terms, and to refuse to enforce the agreement.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

## A. *Cambrian Hires Alberto; Alberto Signs Agreements*

Cambrian hired Alberto on or about September 17, 2019. That same day, as part of her orientation, a Cambrian representative gave her agreements to sign. Three of those agreements relate to resolution of potential disputes: a "Dispute Resolution Process—Arbitration Agreement," a

---

[1] The parties do not materially dispute the facts we describe here.

2

"Confidentiality Agreement," and a "Confidentiality Agreement Addendum."

## 1. Arbitration Agreement

The Arbitration Agreement states that "[a]ny and all claims or controversies arising out of Employee's . . . employment . . . or cessation of employment with Cambrian shall be resolved through final and binding arbitration." The parties agreed not to "join or consolidate claims submitted for arbitration under this Agreement with those of any other persons, and that no form of class, collective, or representative action" would be maintained without the parties' mutual consent. They "agree[d] that by signing this Agreement[,] they have entered into a binding legal agreement." The agreement states that "[t]his Agreement is entered into under the Federal Arbitration Act, and shall be interpreted and construed in accordance with the law and procedures developed under that statute."

The Arbitration Agreement contains two signature blocks, one for "Employee Name Printed" and one for "Paul J. Quiroz" as "Managing Director." Alberto signed the Arbitration Agreement in the signature block allotted for her. But the signature block for Mr. Quiroz, as "Managing Director," was left blank.

## 2. Confidentiality Agreement and Addendum

Alberto signed the Confidentiality Agreement and Addendum on the same day and as part of the same process

3

in which she signed the Arbitration Agreement.  The Confidentiality Agreement states that Alberto may not disclose what that agreement calls "trade secrets."  It defines such "trade secrets" broadly to include "information of a confidential, proprietary or secret nature."  Notably, "[s]uch trade secret information includes, but is not limited to, compensation and salary data and other employee information."  The Confidentiality Agreement required Alberto to "acknowledge" that unauthorized use or disclosure of Cambrian's proprietary information "would cause irreparable injury to the Company," and to "consent to the order of an immediate injunction, without bond, from any court of competent jurisdiction, enjoining and restraining" Alberto from "violating or threatening to violate" the agreement.  The agreement also states that if a dispute arises "and a lawsuit is filed, the prevailing party shall be entitled to reasonable attorney's fees and costs."

The Confidentiality Agreement Addendum requires Alberto to keep confidential "[a]ll . . . employee information," including, without limitation, their "names . . . , addresses and phone numbers."  The Addendum reiterates that disclosure of such information would cause "irreparable injury" to Cambrian, and that the failure to comply with the agreement would entitle Cambrian "to seek injunctive or equitable relief as well as monetary damages."

**B.** *Alberto Files a Complaint; Cambrian Demands Arbitration*

On October 27, 2020, Alberto filed a complaint, alleging multiple wage-and-hour causes of action. On January 4, 2021, Cambrian asked Alberto to arbitrate her dispute. She refused and, on January 25, 2021, filed a "First Amended Class Action Complaint," again alleging wage-and-hour causes of action, and also alleging she was an "'aggrieved employee'" under the Private Attorneys General Act (PAGA).

On March 17, 2021, Cambrian petitioned to compel arbitration. Cambrian also contended that Alberto had waived any class or representative claims.

On April 7, 2021, Alberto opposed the petition. She argued that no arbitration agreement had been formed because Cambrian had not signed the agreement. She also argued that the Arbitration Agreement was "infected with both procedural and substantive unconscionability, the taint of which cannot be severed or cured." On April 19, 2021, Cambrian replied.

On April 29, 2021, the trial court considered Cambrian's petition, and asked for additional briefing on the issue of whether the Arbitration Agreement delegated the determination of the Arbitration Agreement's validity to an arbitrator, not the court. The parties filed supplemental briefing. Cambrian initially asked the trial court to decide the validity of the waiver of representative action but leave for the arbitrator remaining issues concerning the Arbitration Agreement's validity. Ultimately, both

Cambrian and Alberto agreed that the trial court, not the arbitrator, should decide all issues concerning the validity of the agreement to arbitrate, a stipulation the trial court accepted.

## C.  *The Trial Court Denies Cambrian's Petition*

On June 11, 2021, the trial court denied Cambrian's petition to compel arbitration.  The trial court found that Cambrian's failure to sign the Arbitration Agreement meant that the parties had not formed an agreement to arbitrate. It reasoned that the Arbitration Agreement contained an "express[] provision that the parties need[ed] to sign it in order [for it] to be binding."

The trial court also found the Arbitration Agreement unconscionable and unenforceable, even assuming it had been formed.  It found the agreement procedurally unconscionable as a contract of adhesion.  Recognizing that both procedural and substantive unconscionability were necessary to avoid enforcing the agreement, the trial court found the agreement substantively unconscionable for three reasons.  First, it noted that the Confidentiality Agreement and Addendum, which it found to be part of the "same transaction" as the Arbitration Agreement, allowed Cambrian to obtain injunctive relief in a court to remedy a violation of Cambrian's confidentiality interests, without the need to post a bond or demonstrate irreparable injury, even as Alberto's claims against Cambrian were relegated to arbitration.  Second, the trial court found unconscionable the

6

Confidentiality Agreement's prohibition on discussing salary information. The trial court reasoned that if Alberto "sought to avail herself of her rights under the Labor Code, she would be faced with either the inability to discuss or disclose salary information with other employees [under] the threat of litigation, including potential liability for attorneys' fees and cost[s]," which would "dissuade employees from bringing claims individually," and impede "the ability for employees to investigate facts for collective action." Third, the trial court found the agreement's wholesale waiver of PAGA claims unconscionable and against public policy. Based on the combination of these three factors, the court found a "high degree of substantive unconscionability."

The trial court found the entire agreement to arbitrate "permeat[ed]" by unconscionability, meaning that the unconscionable provisions could not be severed and the remainder of the Arbitration Agreement enforced. It noted that "standing alone, none of these clauses would necessitate a conclusion that the agreement is permeat[ed by] unconscionability. However, taken together, such a conclusion is required." Cambrian timely appealed.

## DISCUSSION

### A. *The Trial Court Did Not Abuse Its Discretion in Refusing to Enforce the Agreement*

Cambrian, on appeal, contests the trial court's rulings on contract formation and unconscionability. We need not

7

reach the contract formation issue. Assuming (without deciding) that Cambrian and Alberto formed an arbitration agreement despite Cambrian's missing signature, the agreement had unconscionable terms. The trial court was not required to sever those terms, and therefore was not required to enforce the Arbitration Agreement.

## 1. Unconscionable Terms

### (a) Basic principles and standard of review

Unconscionable terms in an arbitration agreement cannot be enforced. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 118.) "[T]he party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense, such as unconscionability. [Citations.]" (*Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1468.)

When the facts are not in dispute, this court reviews unconscionability de novo. (*Pinela v. Neiman Marcus Grp., Inc.* (2015) 238 Cal.App.4th 227, 241 [reviewing de novo "the legal question of unconscionability here, in the first instance" when there were "no facts in dispute"].) Here, no disputed factual issue bears upon our unconscionability analysis. The parties do not dispute the language of the relevant agreements. They do not dispute that Alberto was required to sign the agreements as a condition of employment. Accordingly, our review of Alberto's unconscionability defense is de novo.

"'[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on '"oppression"' or '"surprise"' due to unequal bargaining power, the latter on '"overly harsh"' or '"one-sided"' results.  [Citation.]  'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'  [Citation.]  But they need not be present in the same degree.  'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.'  [Citations.]  In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."' (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

The trial court found a low degree of procedural unconscionability due to the adhesive nature of the agreement.  Neither party contests this finding on appeal.  Therefore, only a high degree of substantive unconscionability would render the agreement unconscionable.  (See, e.g., *Ramirez v. Charter Communications, Inc.* (2022) 75 Cal.App.5th 365, 373, review granted June 1, 2022, S273802 ["When, as here, the degree of procedural unconscionability is low, the agreement

9

must be enforced unless the degree of substantive unconscionability is high"].) We find that the trial court did not err in finding a high degree of substantive unconscionability.

### (b) Relation of Confidentiality Agreement to Arbitration Agreement

Cambrian largely concedes that parts of the Confidentiality Agreement are substantively unconscionable. It argues, however, that unconscionability in the Confidentiality Agreement does not matter. According to Cambrian, because "the Confidentiality Agreement is not part of the Arbitration Agreement . . . any purportedly unconscionable provisions in the Confidentiality Agreement have no bearing on the enforceability of the Arbitration Agreement." Not so.

"'Under Civil Code section 1642, it is the general rule that several papers relating to the same subject matter and executed as parts of substantially one transaction, are to be construed together as one contract [citation].'" (*IMO Development Corp. v. Dow Corning Corp.* (1982) 135 Cal.App.3d 451, 463.) According to that rule, documents executed as part of a single transaction are construed together, even if they do not expressly refer to one another. (*Boyd v. Oscar Fisher Co.* (1989) 210 Cal.App.3d 368, 378; *Cadigan v. American Trust Co.* (1955) 131 Cal.App.2d 780,

10

786–787 ["it [is] unnecessary for either instrument to refer to the other"].)

Here, we have no difficulty concluding that the Arbitration Agreement and the Confidentiality Agreement should be read together. They were executed on the same day. They were both separate aspects of a single primary transaction—Alberto's hiring. They both governed, ultimately, the same issue—how to resolve disputes arising between Alberto and Cambrian arising from Alberto's employment. Failing to read them together artificially segments the parties' contractual relationship. Treating them separately fails to account for the overall dispute resolution process the parties agreed upon.

So, unconscionability in the Confidentiality Agreement can, and does, affect whether the Arbitration Agreement is also unconscionable. To hold otherwise would let Cambrian impose unconscionable arbitration terms, and then avoid a finding of unconscionability because it put the objectionable terms in a (formally) separate document. That is contrary to Civil Code section 1642. (See *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1675–1676 [trial court properly considered under Civil Code section 1642 separate documents containing arbitration clauses and employment contract with no such clause when all documents were part of same transaction], abrogated on other grounds by *Donovan v. Rrl Corp.* (2001) 26 Cal.4th 261, 279, as recognized in *Greif v. Sanin* (2022) 74 Cal.App.5th 412, 439.)

11

Cambrian argues the trial court erred by "incorporat[ing]" the terms of the Confidentiality Agreement into the Arbitration Agreement, citing *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1331. This argument confuses two principles of law. Construing different instruments together pursuant to Civil Code section 1642 is not the same thing as incorporating them into one instrument. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 759 [""[J]oint execution would require the court to construe the two agreements in light of one another; it would not merge them into a single written contract""].) Cambrian is correct—the Arbitration Agreement and the Confidentiality Agreement do not incorporate one another. But, since the two agreements were part of a single transaction (Alberto's hiring and the dispute resolution procedure applicable to Alberto) unconscionability in the Confidentiality Agreement is relevant in determining whether the parties' agreement to arbitrate was unconscionable.[2] We turn now to that question.

---

[2] At oral argument, Cambrian contended that *Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675 supports its position. We disagree. In *Ahern*, one agreement lacked an arbitration clause while another agreement contained a "narrow" one. (*Id.* at 689.) Our colleagues in Division Seven rejected an argument that Civil Code section 1642 compelled the importation of the arbitration clause from one agreement into the other, finding that the two separate agreements covered "distinct and successive phases" of a real estate transaction, with nothing
*(Fn. is continued on the next page.)*

12

## **(c) Non-mutuality**

"'[T]he paramount consideration in assessing conscionability is mutuality.' [Citation.]" (*Davis v. Kozak* (2020) 53 Cal.App.5th 897, 910.) Here, the trial court found the Confidentiality Agreement's injunction provisions made the parties' agreement to arbitrate insufficiently mutual. The Arbitration Agreement required Alberto to arbitrate all of her claims against Cambrian. But the Confidentiality Agreement allowed Cambrian to obtain—outside of arbitration—an "immediate" injunction for Alberto's breach of Cambrian's confidentiality requirements. Specifically, the Confidentiality Agreement required Alberto to consent to an "order of an immediate injunction, without bond, from any court of competent jurisdiction, enjoining and restraining" Alberto from disclosing confidential or proprietary information. It allowed Cambrian to obtain attorney fees if it prevailed on such an injunction. An injunction enforcing

---

"suggesting arbitration was mandatory" for disputes relating to the agreement without an arbitration clause. (*Id*. at 696.) Here, the Confidentiality Agreement and Arbitration Agreements do not cover distinct phases of a transaction. Instead, they represent the parties' *overall* agreement as to how to handle dispute resolution in connection with Alberto's employment. *Ahern* says nothing about the issue before us—whether, when there are two separate agreements, both executed on a single day as part of an employee's hiring, and both of which govern dispute resolution as part of the overall employment relationship, we may conclude the unconscionability in both agreements renders the agreement to arbitrate unconscionable.

13

Cambrian's confidentiality terms would, of course, exclusively benefit Cambrian.

The trial court's finding was well supported by California law. To be sure, provisions that allow employers to seek a preliminary injunction outside of arbitration for breach of a confidentiality agreement are not, by themselves, unconscionable, simply because they primarily benefit employers. (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 450 [provision allowing employer to seek preliminary injunctive relief for breach of confidentiality agreement was within legitimate "margin of safety" for employer and not unconscionable]; *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 250 (*Carbajal*) [right to preliminary injunctive relief protected by California Arbitration Act].) But additional provisions that waive the employer's need to obtain a bond before seeking an injunction, waive the employer's need to show irreparable harm, and require an employee to consent to an immediate injunction *are* unconscionable. They exceed the legitimate "margin of safety" for the employer and are not mutual. (*Lange, supra*, 46 Cal.App.5th at 451 ["injunctive relief provisions that waive a bond and waive the requirement that a party show irreparable harm are substantively unconscionable"]; *Carbajal, supra*, 245 Cal.App.4th at 250 ["injunctive relief carve-out provision creates further substantive unconscionability because it waives the requirement that [employer] post a bond to obtain an injunction or other equitable relief"]; *ibid.* ["arbitration

14

provision lacks mutuality and is substantively unconscionable when it authorizes the stronger party to obtain injunctive relief without establishing all of the essential elements for the issuance of an injunction"].)[3] Each of those provisions was present here—the Confidentiality Agreement and Addendum waived Cambrian's need to obtain a bond before seeking an injunction, required Alberto to agree in advance to the existence of irreparable injury, and required Alberto to consent to the issuance of an injunction. Those terms made the injunction provision unconscionable.

### (d)  Discussion of wages

The trial court found the Confidentiality Agreement's prohibition on discussing wages unconscionable. As we describe above, the Confidentiality Agreement treated "compensation and salary data and other employee information" as a supposed "trade secret" that Alberto could be enjoined from discussing. Cambrian does not meaningfully contest the trial court's conclusion that this provision was unconscionable, arguing only that a case relied upon by Alberto (*Ting v. AT&T* (9th Cir. 2003) 319 F.3d 1126) is inapposite.

---

[3]  Cambrian attempts to distinguish *Lange* and *Carbajal* by noting that the carveouts in those cases were set forth in the arbitration agreements themselves, not separate documents. Because the trial court properly construed the agreements in this case in light of each other, this distinction is immaterial.

The trial court was correct on this point. The Labor Code provides that "No employer may do any of the following: [¶] (a) Require, as a condition of employment, that an employee refrain from disclosing the amount of his or her wages. [¶] (b) Require an employee to sign a waiver or other document that purports to deny the employee the right to disclose the amount of his or her wages. [¶] (c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses the amount of his or her wages." (Lab. Code, § 232.) The Confidentiality Agreement on its face violated the Labor Code.

A facially illegal provision, in direct contravention of the Labor Code, is unconscionable. And the provision was not merely illegal or unconscionable in a general sense. It was a kind of illegality that directly affected Alberto's status in the arbitration process. As the trial court explained, if Alberto "sought to avail herself of her rights under the Labor Code, she would be faced with either the inability to discuss or disclose salary information with other employees [under] the threat of litigation, including potential liability for attorneys' fees and cost[s]." The trial court rightly noted that this provision "dissuade[d] employees from bringing claims individually," and impeded "the ability for employees to investigate facts" that might be used in a representative action, including a PAGA action. The trial court was thus

16

correct to find the restriction on discussing wages rendered the Arbitration Agreement substantively unconscionable.[4]

### (e) PAGA claims

"A PAGA representative action is . . . a type of qui tam action," in which "'an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 380, 381 (*Iskanian*).) "'An employee plaintiff suing . . . under the [PAGA] does so as the proxy or agent of the state's labor law enforcement agencies.'" (*Id.* at 380.)

The Arbitration Agreement provided that "no form of class, collective, or representative action" would be

---

[4] Under the Federal Arbitration Act ("FAA"), issues that go to the validity of an underlying contract, as opposed to the validity of an arbitration agreement itself, are normally decided by an arbitrator, not the court. (See *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 445–446 ["unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"].) The parties' briefing does not address the applicability of this aspect of the FAA to this case, perhaps because the parties stipulated to the court deciding all issues around the validity of the agreement to arbitrate. Accordingly, we do not consider how this aspect of the FAA might matter to this case, except to note that, as we discuss above, the restriction on discussing wages here is not merely a generally illegal provision, but an illegal provision that directly affects the one-sidedness of the arbitration process.

17

maintained without the parties' mutual consent. Citing *Iskanian*, the trial court found this provision unconscionable because it required Alberto to waive her PAGA claims.

In *Iskanian*, our Supreme Court held that "an employee's right to bring a PAGA action is unwaivable," and that "a prohibition of *representative* claims frustrates the PAGA's objectives." (*Iskanian*, *supra*, 59 Cal.4th at 383, 384.) Our Supreme Court therefore concluded that "where . . . an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." (*Id.* at 384.) In *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906, 1914, decided after the trial court's ruling, the United States Supreme Court found a different part of *Iskanian*'s interpretation of PAGA preempted by the FAA. But the United States Supreme Court did not disturb *Iskanian*'s holding that a blanket PAGA waiver is unconscionable under California law. Rather, the United States Supreme Court found that, insofar as *Iskanian* invalidated a provision for being "a wholesale waiver of PAGA claims, . . . that aspect of *Iskanian* is not preempted by the FAA." (*Viking River Cruises*, *supra*, 142 S.Ct. at 1924–1925.) Although the trial court did not have the benefit of *Viking River Cruises* when it ruled, that opinion would not have changed the outcome. Both before and after *Viking River Cruises*, blanket waivers of PAGA claims are unconscionable. Therefore, the trial court's ruling on this issue was correct.

## 2. Severance

Thus, we affirm the trial court's finding that the three provisions it identified—the non-mutual confidentiality injunction provisions, the prohibition on discussion of wages, and the prohibition on representative and PAGA claims—contained a high degree of substantive unconscionability. We next determine whether the trial court acted properly when it refused to sever these provisions from the rest of the parties' agreement to arbitrate.

Unlike our de novo review of Alberto's unconscionability defense, the decision on whether to sever unconscionable terms from an agreement is "reviewed for abuse of discretion" under Civil Code section 1670.5. (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 821, 826.) "'A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused.'" (*Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1056.) In the context of severing unconscionable provisions from an arbitration agreement, "the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement: Although 'the statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement[,] . . . it also appears to contemplate the latter course only when an agreement is "permeated" by unconscionability.' [Citation.]" (*Roman v. Superior Court*

19

(2009) 172 Cal.App.4th 1462, 1477–1478, quoting *Armendariz*, *supra*, 24 Cal.4th at 122.)

Here, the trial court concluded that, although none of the unconscionable provisions on their own "would necessitate a conclusion that the agreement is permeat[ed] by] unconscionability . . . taken together, such a conclusion is required." Based on the finding that severance was not possible and unconscionability "permeat[ed]" the Arbitration Agreement, the trial court refused to enforce it.

We find that the trial court's determination that the agreement was permeated by unconscionability, while not required, was within its discretion. One factor weighing against severance is when "the arbitration agreement contains more than one unlawful provision." (*Armendariz*, *supra*, 24 Cal.4th at 124.) As discussed above, three aspects of the agreements are unconscionable: the carve-outs permitting Cambrian to obtain an injunction from the courts on one-sided terms on matters more significant to Cambrian while relegating the claims most significant to Alberto to arbitration, the illegal prohibition on Alberto discussing her wages, and the waiver of PAGA claims. Taken together, the trial court could have reasonably concluded that "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Ibid.*) Thus, the trial court's finding that unconscionability permeated the arbitration agreement as a whole and its refusal to sever the unconscionable

provisions was a reasonable exercise of its discretion.  The trial court was not required to sever the offending provisions and enforce the remainder of the Arbitration Agreement.

## DISPOSITION

The trial court's order denying arbitration is affirmed. Respondent is awarded her costs on appeal.

DAUM, J. [*]

We concur:

COLLINS, J.

CURREY, Acting P.J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.

21

Filed 5/10/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JENNIFER PLAYU ALBERTO,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>CAMBRIAN HOMECARE,<br><br>     Defendant and Appellant. | B314192<br><br>(Los Angeles County<br> Super. Ct. No. 20STCV41466)<br><br>     ORDER GRANTING<br>     PUBLICATION |

THE COURT:*

     The opinion in the above-entitled matter filed on April 19, 2023, was not certified for publication in the Official Reports.  Good cause appearing, it is ordered that the opinion in the above-entitled matter be published in the official reports.

---

*CURREY, Acting P.J.          COLLINS, J.          DAUM, J.**

**Judge of the Los Angeles Superior Court, assigned by the Chief
   Justice pursuant to article VI, section 6 of the California Constitution.