Filed 6/20/25  Weisfeiler v. ByteDance CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| IRINA WEISFEILER,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BYTEDANCE INC.,<br><br>        Defendant and Appellant. | A168006<br><br><br>(Alameda County<br>Super. Ct. No. 23CV027645) |

ByteDance Inc. appeals from the trial court's order denying its motion to compel arbitration of Irina Weisfeiler's complaint for civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.) alleging violations of Labor Code section 1197.5, which prohibits pay discrimination based on gender or sex.  The trial court denied ByteDance's motion because it found the arbitration agreement procedurally and substantively unconscionable, and lacking mutuality.  It further found it could not sever the unconscionable provisions without materially altering the agreement.  ByteDance argues the agreement is not unconscionable and even if the provision allowing ByteDance to seek equitable or injunctive relief in any court is unconscionable, the trial court abused its discretion by declining to sever this provision.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    *Agreements*

Weisfeiler was employed by ByteDance from February 2020 to July 2022.  On February 15, 2020, she signed an offer of employment which stated in part:  "As a condition of your employment and in consideration for the payments and benefits described in this letter, you will be required to sign the Company's confidentiality and inventions assignment agreement (the 'Confidentiality and Inventions Assignment Agreement')."  (Boldface and underscoring omitted.)  "You agree that any dispute, controversy or claim arising out of or relating to or resulting from your employment with the Company, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration before the American Arbitration Association ('AAA') to be held in Santa Clara County, California before a single arbitrator, in accordance with the then-current Employment Arbitration Rules and Mediation Procedures of the AAA and the Federal Arbitration Act, as modified by the terms and conditions contained in this paragraph.  By signing this letter, you agree to waive all rights to a jury trial and the right to pursue any class or representative claims to the maximum extent allowed by law.  To the extent a class or representative claim may not be waived, you agree to stay any such claims until after all claims subject to arbitration are fully resolved.  The arbitrator shall be selected by mutual agreement of the parties or, if the parties cannot agree, then by striking from a list of arbitrators supplied by the AAA.  The arbitrator shall issue a written opinion stating the essential findings and conclusions on which the arbitrator's award is based.  The Company will pay the arbitrator's fees and arbitration expenses and any other costs unique to the arbitration hearing (recognizing that each side bears its own deposition, witness, expert and

2

attorney's fees and other expenses to the same extent as if the matter were being heard in court). This agreement to arbitrate has been freely negotiated and is mutually entered into between the parties. You fully understand and agree that you are giving up certain rights otherwise afforded to you by civil court actions, including but not limited to the right to a jury trial." (Boldface and underscoring omitted.) Weisfeiler was given five days within which to sign the offer letter.

On February 28, 2020, Weisfeiler was presented with the confidentiality and inventions assignment agreement (CIAA) and a cover statement providing: "Please take time to review the Agreement carefully. It contains material restrictions on your right to disclose or use, during or after your employment, certain information and technology learned by you during your employment. [¶] Bytedance Inc. considers this Agreement to be very important to the protection of its business. It intends to enforce the terms of the Agreement and to pursue, appropriate, injunctions, restraining orders, and money damages, should you violate the Agreement. [¶] It is a condition of your employment and certain payments and benefits to be provided to you by Bytedance Inc. and its affiliates that you execute this Agreement. [¶] If you have any questions concerning this Agreement, you may wish to consult an attorney. The employees and agents of Bytedance Inc. and its affiliates are not authorized to, and will not, give you legal advice concerning this Agreement. [¶] If you have read and understand the Agreement, and if you agree to its terms and conditions, please return a fully executed copy, retaining one copy for yourself." (*Sic.*)

The CIAA begins: "As a condition of Employee's employment and certain payments and benefits to be provided to Employee by Employer, which Employee acknowledges to be good and valuable consideration for

Employee's obligations hereunder, Employer and Employee hereby agree as follows: . . . ." It then contains multiple paragraphs over eight pages addressing confidentiality and nondisclosure obligations. As relevant here, paragraph 9, entitled "Obligations and Remedies," states: "Employee agrees that an impending or existing violation of any of the covenants contained in this Agreement would cause Employer and its affiliates irreparable injury for which they would have no adequate remedy at law and agrees that Employee further agrees that nothing in this Agreement is intended to limit any remedy of Employer under the Uniform Trade Secrets Act. Employer shall be entitled to obtain injunctive relief prohibiting such violation, in addition to any other rights and remedies available to it in contract, at law, in equity, by statute or otherwise. Employee agrees and consents that Employer shall be entitled to a temporary or permanent injunction or other equitable relief against any such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. Employee also agrees that, in the event that Employee breaches any of the covenants contained in this Agreement or initiates legal action to challenge any such covenant, Employee shall be liable to Employer for attorneys' fees and costs incurred in any legal activity engaged in, defended by, or prosecuted by Employer to enforce such covenant or seek remedy of such breach." (*Sic.*, boldface omitted.)

Paragraph 10.B. of the CIAA is entitled "Arbitration and Class Action Waiver," and it contains identical language regarding arbitration as in the offer letter except that "You" is replaced with "Employee" and "Company" is replaced with "Employer."

4

The CIAA also contains a severability clause stating: "If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provisions shall be modified to the minimum extent necessary to comply with applicable law and the intent of the parties. If any provision of this Agreement, or application of it to any person, place, or circumstances, shall be held by an arbitrator or court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement and such provisions as applied to other persons, places, and circumstances shall remain in full force and effect. Employee and Employer agree that, except as may be otherwise set forth in Section 10.B., the arbitrator or court of competent jurisdiction is expressly authorized to modify any unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as its deems warranted to carry out the intent and agreement of the parties as embodied herein to the maximum extent of the law." (*Sic*.)

Finally, the CIAA contains an integration clause stating, in relevant part: "This Agreement sets forth the entire agreement and understanding between Employer and Employee relating to the subject matter herein and, as of the Effective Date [March 2, 2020], supersedes all prior discussions between the parties." Weisfeiler signed the CIAA on February 28, 2020, the same day it was provided to her.

## II. *ByteDance's Motion to Compel Arbitration of Weisfeiler's Complaint*

On February 10, 2023, Weisfeiler filed a complaint against ByteDance, doing business as TikTok, for civil penalties under PAGA for violations of Labor Code section 1197.5, subdivision (a) based on the failure to pay equal

5

wages to Weisfeiler and other female employees for similar work.

On April 11, 2023, ByteDance moved to compel arbitration based on the arbitration agreement in the offer letter and the arbitration agreement in the CIAA. Weisfeiler's opposition argued that the arbitration agreement is procedurally unconscionable because it is a contract of adhesion imposing a mandatory condition of employment and that it is substantively unconscionable because it lacks mutuality by requiring arbitration for the employee's claims but allowing the employer to seek injunctive or equitable relief in court.[1] ByteDance's reply argued there was no evidence that the arbitration agreement was a condition of employment and that the agreement did not lack mutuality because it applies to "*any* dispute" arising out of Weisfeiler's employment. ByteDance's reply did not mention the severability clause or argue that any portion of the parties' agreement should be severed.

The trial court issued a tentative ruling denying the motion. At the hearing on the motion, ByteDance maintained that the agreement was not unconscionable but also argued that the " 'Obligations and Remedies' " section did not need to be read in conjunction with the arbitration provisions and that if the court found the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.) provision to be unconscionable, it could be severed from the rest of the agreement.

The trial court adopted its tentative ruling denying ByteDance's motion. It found that the CIAA was the relevant agreement because it postdated the offer letter and stated that it " 'supersedes all prior discussion

---

[1] Weisfeiler also argued that the arbitration agreement included an unenforceable PAGA waiver. The trial court rejected this argument, and it is not an issue on appeal.

6

between the parties.' " The trial court found the arbitration agreement contained a minimal degree of procedural unconscionability based upon the fact that the CIAA expressly stated it was a condition of Weisfeiler's employment and there was no evidence that Weisfeiler negotiated the terms of the arbitration agreement. It further found the arbitration agreement was substantively unconscionable because it lacked mutuality in that Weisfeiler was required to arbitrate any claims related to her employment while ByteDance could seek "any remedy," including injunctive relief, under the Uniform Trade Secrets Act. The trial court noted that certain carve-out provisions may be permissible when there is a legitimate commercial need but that ByteDance offered no such justification in its moving or reply papers. It further found that it could not sever the unconscionable provisions without materially altering the agreement.

## DISCUSSION

### I. *Legal Principles*

"Absent conflicting evidence, we review de novo the trial court's interpretation of an arbitration agreement including the determination whether it is enforceable on unconscionability grounds." (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1120.) If the court's ruling is based on a finding of fact, we review the factual determination under the substantial evidence standard. (*Id.* at p. 1121.) We review the trial court's decision whether to sever portions of the arbitration agreement for abuse of discretion. (*Caroma v. Lincoln* (2014) 226 Cal.App.4th 74, 82–83.)

Unconscionability has both a procedural and a substantive element. The procedural element focuses on " ' "oppression" ' or ' "surprise" ' " due to unequal bargaining power, and the substantive element focuses on " ' "overly harsh" ' or ' "one-sided" ' " results. (*Armendariz v. Foundation Health*

*Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

" 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree . . . . In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Ibid.*)

## II. *Unconscionability Determination*

### A. **Procedural Unconscionability**

The record reflects that ByteDance gave Weisfeiler an offer letter dated February 13, 2020, which included an arbitration provision and also stated that she was required to sign the CIAA as a "condition of your employment . . . ." Weisfeiler was given five calendar days to sign the offer letter. She signed it on February 15, 2020. Weisfeiler was given the CIAA on February 28, 2020, and she signed it the same day. The CIAA states it is effective as of March 2, 2020. The CIAA supersedes all prior discussions and contains an arbitration provision with nearly identical wording as the arbitration provision in the offer letter.

We agree with the trial court that the arbitration agreements signed by Weisfeiler were presented as a condition of her employment. As the trial court correctly found, the CIAA, which included an arbitration agreement and superseded prior agreements, expressly stated it was a condition of employment. ByteDance argues the CIAA reflects "little to no procedural unconscionability" because Weisfeiler presented no evidence of surprise or oppression, the arbitration provision bears a bolded heading, she was given time to review the CIAA, and she was advised that she may wish to consult

8

counsel. However, ByteDance acknowledges case law holding that adhesive employment contracts present a low level of procedural unconscionability. (E.g., *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 441; *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 907, disapproved on other grounds in *Ramirez v. Charter Communications* (2024) 16 Cal.5th 478.) "Arbitration contracts imposed as a condition of employment are typically adhesive" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126) given that "few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz, supra*, 24 Cal.4th at p. 115.)

Here, the trial court found a minimal degree of procedural unconscionability on the basis that Weisfeiler was required to sign the agreements containing "substantively identical [arbitration provisions], which suggests that it is [ByteDance's] standard language and not the result of any negotiations." Contrary to ByteDance's suggestion, a finding of procedural unconscionability does not require the employee to present evidence that it tried to negotiate standardized contract terms. (*O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 283–284.)

We find that the record indicates a low level of procedural unconscionability, which, under the sliding scale analysis, permits us to consider whether the arbitration agreement is also substantively unconscionable. (*Armendariz, supra*, 24 Cal.4th at p. 114.)

## B. Substantive Unconscionability

ByteDance argues the trial court's finding that the CIAA lacked mutuality is based on a misreading of the CIAA. The trial court found a lack of mutuality because "[t]he agreement requires [Weisfeiler] to arbitrate 'any dispute, controversy or claim' related to [Weisfeiler's] employment, but allows [ByteDance] to seek 'any remedy,' including injunctive relief, under the

9

Uniform Trade Secrets Act and allows [ByteDance] to bring legal action 'in the event that [Weisfeiler] breaches any of the covenants contained in this Agreement,' making [Weisfeiler] liable for attorneys' fees and costs."

In determining whether a contract is substantively unconscionable, courts consider " ' "the fairness of an agreement's actual terms and . . . whether they are overly harsh or one-sided." ' " (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 247.)  Arbitration agreements must have a " 'modicum of bilaterality' " to avoid substantive unconscionability. (*Armendariz, supra*, 24 Cal.4th at pp. 117–118.)  As explained in *Armendariz*: "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.' . . . If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration.  Without reasonable justification for this lack of mutuality, arbitration appears less a forum for neutral dispute resolution and more as a means of maximizing employer advantage." (*Ibid.*)

We agree with the trial court that the CIAA is substantively unconscionable because it lacks mutuality.  As explained, the CIAA contains broad language preserving ByteDance's rights and remedies, specifically including the ability to seek injunctive relief in court, and it requires Weisfeiler to give up her rights to pursue civil court actions and instead to arbitrate her claims.  Paragraph 9 of the CIAA, entitled "Obligations and Remedies," states:  *"[N]othing in this Agreement is intended to limit any remedy of Employer under the Uniform Trade Secrets Act.  Employer shall be*

10

*entitled to obtain injunctive relief prohibiting such violation, in addition to any other rights and remedies available to it in contract, at law, in equity, by statute or otherwise.*" (Italics added.) Further: "Employer shall be entitled to a temporary or permanent injunction or other equitable relief against any such breach or threatened breach from *any court of competent jurisdiction*, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security." (Italics added.) In addition, the employee agrees that in the event of any breach of the agreement: "Employee shall be liable to Employer for attorneys' fees and costs incurred in any legal activity engaged in, defended by, or prosecuted by Employer to enforce such covenant or seek remedy of such breach."

Paragraph 10.B. of the CIAA, entitled "Arbitration and Class Action Waiver," repeatedly references the "Employee['s]" agreement and waivers but does not state that the employer similarly agrees to arbitrate claims it may initiate or that the employer waives its right to a jury trial or any other rights afforded in civil court actions. (Boldface omitted.) Specifically, it states: "*Employee* agrees that any dispute, controversy or claim arising out of . . . Employee's employment with Employer . . . shall be submitted to final and binding arbitration . . . . *Employee* agrees to waive all rights to a jury trial . . . . *Employee* fully understands and agrees that *Employee* is giving up certain rights otherwise afforded to *Employee* by civil court actions, including but not limited to the right to a jury trial." (Italics added.) ByteDance argues the arbitration provisions apply both to claims brought by it and to claims brought by Weisfeiler. It bases its argument that the arbitration agreement contains a " 'modicum of bilaterality' " on the following clauses: "any dispute, controversy or claim arising out of . . . Employee's employment with

11

Employer . . . shall be submitted to . . . arbitration"; the arbitrator "shall be selected by mutual agreement of the parties"; and the "Employer will pay the arbitrator's fees and arbitration expenses and any other costs unique to the arbitration hearing . . . ."

We are unpersuaded that these portions of the arbitration agreement obligate ByteDance to submit claims it may have against Weisfeiler to arbitration. The portions of the arbitration provision on which ByteDance relies to show purported mutuality only indicate ByteDance's agreement as to how the arbitration of Weisfeiler's claims will proceed. Nothing in the arbitration provision states that ByteDance agrees to arbitrate claims it may bring or agrees to waive its right to a jury trial. (See *Armendariz, supra*, 24 Cal. 4th at p. 120 [recognizing that although an agreement may not expressly authorize litigation of the employer's claims, "the lack of mutuality can be manifested as much by what the agreement does not provide as by what it does"]; *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1253–1254 [rejecting argument that agreement stating "all disputes . . . shall be resolved by binding arbitration" was bilateral when only applicant agreed to clause].) Nor are we persuaded that *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1473, supports ByteDance. *Roman* rejected the contention that "the mere inclusion of the words 'I agree' by one party in an otherwise mutual arbitration provision destroys the bilateral nature of the agreement." (*Ibid.*) As we explain *post*, ByteDance's agreement contains multiple unilateral provisions.

We further reject ByteDance's argument that what it characterizes as "*only* a limited carveout for injunctive/equitable relief for breach of the CIAA" does not create a lack of mutuality making the arbitration agreement substantively unconscionable. As quoted *ante*, paragraph 9 of the CIAA

12

states "nothing in this Agreement is intended to limit any remedy of [ByteDance] under the Uniform Trade Secrets Act." It then expressly refers to ByteDance's entitlement to injunctive relief "in addition to any other rights and remedies available to it in contract, at law, in equity, by statute or otherwise." Finally, it states "[ByteDance] shall be entitled to a temporary or permanent injunction or other equitable relief against any such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security." We reject ByteDance's reading of this language to create only a limited carve-out from arbitration for injunctive and equitable relief. Nothing in the CIAA expressly requires ByteDance to arbitrate claims it may bring against Weisfeiler. (*Armendariz, supra*, 24 Cal.4th at p. 120.) Instead, the CIAA expressly preserves all of ByteDance's rights and remedies for breach of the CIAA and even goes further by allowing ByteDance to obtain injunctive relief in court without the necessity of posting a bond, showing actual damages, or showing that monetary damages are inadequate. In the employment context, an arbitration agreement "is unfairly one-sided [if] it compels arbitration of . . . claims more likely to be brought by [the employee], the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by [the employer], the stronger party." (*Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 709, 725 [finding unconscionable even a facially bilateral provision exempting "disputes over confidentiality/non-compete agreements or intellectual property rights" because "it is far more often the case that employers, not employees, will file such claims"]; *Carbajal v. CWPSC, Inc., supra*, 245 Cal.App.4th at p. 250 ["An arbitration provision lacks mutuality and is substantively

13

unconscionable when it authorizes the stronger party to obtain injunctive relief without establishing all of the essential elements for the issuance of an injunction"].)

ByteDance argues there is no unconscionability in the one-sided contract provisions because its " 'business realities' . . . create [a] special need for a margin of safety" justifying the one-sided provisions. ByteDance never asserted this argument either in its moving or in its reply papers in the trial court or at the trial court hearing. We agree with Weisfeiler that ByteDance has forfeited this argument. (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 769–772.) Notably, although ByteDance did not raise this argument below, the trial court's tentative ruling acknowledged, "While . . . unequal provisions may be permissible 'if there is a legitimate commercial need for those protections,' [ByteDance] offers no such justification in its moving or reply papers." At the hearing, ByteDance neither objected to this portion of the tentative ruling nor argued that the CIAA itself explained the purported justification for the unequal provisions in the CIAA. It now claims that the trial court's ruling ignored "the unrebutted record," which ByteDance asserts consists of the statements in the CIAA that its confidential information is of competitive importance and commercial value to it and that it would be harmed by disclosure of confidential information, and a declaration of ByteDance's human resources manager stating that ByteDance is a technology company that creates mobile applications and social media/entertainment platforms used around the world. To preserve this issue for review, ByteDance was required to do more than merely provide the trial court with a copy of the CIAA and a declaration generally describing ByteDance's business. (See *Mendoza v. Trans Valley Transport, supra*, 75 Cal.App.5th at pp. 769–772 [finding on appeal from denial of motion to

compel arbitration that employer forfeited delegation clause argument when argument was raised in trial court only "in their reply papers in a cursory manner buried under an [unrelated] argument"].)

Even if ByteDance had not forfeited the issue, we would still disagree that the record provides a justification for the lack of mutuality in the CIAA. Although the CIAA states the importance of ByteDance's confidential information, nothing in the CIAA or in the record explains why ByteDance has a legitimate need for the provisions in the CIAA allowing it to obtain injunctive relief from a court without posting a bond or establishing the essential elements for injunctive relief. ByteDance relies on *Lange v. Monster Energy Co., supra*, 46 Cal.App.5th 436, for the general position that a reasonable justification for a lack of mutuality may be evident on the face of a confidentiality agreement. However, *Lange* does not support ByteDance's argument. *Lange* found an arbitration agreement with an injunctive relief carve-out provision that waived the requirements of a bond and irreparable harm to be substantively unconscionable. (*Id.* at p. 451.)

Nor are we persuaded by ByteDance's argument the CIAA is not unconscionable because Code of Civil Procedure section 1281.8, subdivision (b) authorizes the parties to seek preliminary injunctive relief in court.[2] As explained *ante,* the equitable/injunctive relief provision of the CIAA broadly authorizes ByteDance *only* to seek any type of injunctive/equitable relief in court, including a permanent injunction, without

_____

[2] Code of Civil Procedure section 1281.8, subdivision (b) states: "A party to an arbitration agreement may file in the court in the county in which the arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief."

15

posting a bond or demonstrating irreparable harm or that damages are an inadequate remedy. This one-sided provision goes beyond what Code of Civil Procedure section 1281.8 provides to both parties.[3] (See *Carbajal v. CWPSC, Inc., supra*, 245 Cal.App.4th at p. 250 [rejecting argument that injunctive relief carve-out is not substantively unconscionable based on Code Civ. Proc., § 1281.8, subd. (b)].)

ByteDance further argues that the CIAA's fee provision permitting ByteDance to recover attorneys' fees in connection with enforcing "the covenants contained in this Agreement" is unrelated to the CIAA's arbitration provision and is not a basis for finding the agreement substantively unconscionable. According to ByteDance, even if the fee provision were relevant, it is not objectionable because the arbitrator would have the authority to reform the fee provision to make it mutual under Civil Code section 1717, subdivision (a). The broadly worded, one-sided fee provision is contained in the same "Obligations and Remedies" paragraph that broadly preserves ByteDance's entitlement to injunctive relief and "any

---

[3] *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237 considered injunctive relief language in an arbitration agreement stating, " 'Pursuant to California Code of Civil Procedure [section 1281.8] either party hereto may apply to a California court for any provisional remedy, including a temporary restraining order or preliminary injunction.' " (*Id.* at p. 1241.) *Baltazar* rejected the argument that this language was unconscionable because it unfairly favored Forever 21, which was more likely to seek provisional relief. (*Id.* at pp. 1246–1247.) It concluded that "regardless of whether Forever 21 is, practically speaking, more likely to seek provisional remedies than its employees, simply reciting the parties' rights under section 1281.8 does not place Baltazar at an unfair disadvantage." (*Id.* at p. 1248.) *Baltazar* is distinguishable because the broader language in the CIAA regarding injunctive relief goes beyond what Code of Civil Procedure section 1281.8 provides by statute, and the CIAA also preserves "any other rights and remedies" available to ByteDance.

other rights and remedies available . . . in contract, at law, in equity, by statute or otherwise." (Boldface omitted.) The fee provision makes Weisfeiler "liable to [ByteDance] for attorneys' fees and costs incurred in any legal activity engaged in, defended by, or prosecuted by [ByteDance] to enforce such covenant or seek remedy of such breach." We find the unilateral fee provision further evidences the unconscionability of the agreement. We reject ByteDance's argument that we should not consider the unilateral fee clause, which is part of the same agreement that imposes arbitration on Weisfeiler's claims and preserves ByteDance's ability to pursue all rights and remedies, including permanent injunctive relief in court. (*Davis v. Kozak, supra*, 53 Cal.App.5th at p. 915, fn. 8 [proper to consider language of employee confidentiality agreement in interpreting scope of arbitration agreement when arbitration agreement references confidentiality agreement].) We also reject ByteDance's argument that we should not consider the unilateral fee shifting provision in our unconscionability analysis because an arbitrator or a court may reform the fee provision to make it mutual. (See *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1148 [rejecting employer's argument that one-sided fee provision does not render arbitration agreement unconscionable because the fee provision is unenforceable under the law].)

In sum, we find that the arbitration agreement contained in the CIAA lacks mutuality because it expressly requires only Weisfeiler to submit disputes to arbitration and waive her right to a jury. It does not similarly state that ByteDance also agrees to submit its claims to arbitration or waive its right to a jury. Instead, the agreement expressly preserves all of ByteDance's rights and remedies, including its right to seek injunctive and equitable relief in court without posting a bond and establishing the necessary elements for injunctive relief. Further the CIAA includes a

17

one-sided fee provision making Weisfeiler liable for fees ByteDance incurs to enforce the CIAA.  The lack of mutuality indicates a significant level of substantive unconscionability, which, combined with the low level of procedural unconscionability, makes the arbitration agreement unenforceable.  (*Carbajal v. CWPSC, Inc., supra*, 245 Cal.App.4th at p. 253.)

### C.    Severance

In the trial court, ByteDance did not argue either in its moving or in its reply papers that any portion of the agreement should be severed.  It briefly suggested the possibility of severance of the "UTSA provision" at the conclusion of its rebuttal argument during the hearing.  Even assuming ByteDance's passing reference to severance is sufficient to preserve the issue for appeal, we affirm the trial court's ruling declining to sever any provisions of the agreement.  ByteDance argues that the trial court's refusal to sever the offending unconscionable provisions of the agreement is entitled to no deference because the trial court misconstrued the agreement and improperly considered the one-sided fee provision for fees ByteDance incurs to enforce the CIAA.  We have already rejected ByteDance's arguments that the trial court misconstrued the terms of the agreement or improperly considered certain terms.  We analyze the trial court's severance decision under the abuse of discretion standard.  (*Armendariz, supra*, 24 Cal.4th at p. 122.)

"[T]he doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme.  [Citations.] The overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance."  (*Armendariz, supra*, 24 Cal.4th at p. 124.) We agree with Weisfeiler that the lack of mutuality pervades the entire agreement.  The agreement expressly requires the "Employee" to agree to submit all disputes to arbitration and to waive her rights to a jury trial and

18

also expressly preserves for ByteDance only the ability to obtain injunctive relief in court without posting a bond or establishing the necessary elements, as well as "any other rights and remedies," and makes Weisfeiler liable for ByteDance's attorneys' fees incurred to enforce the agreement. The trial court did not abuse its discretion by declining to sever the multiple unconscionable provisions of the agreement. (*Ibid.*) ByteDance belatedly argues in its reply brief that the trial court erred by refusing to enforce the arbitration agreement contained in Weisfeiler's offer letter predating the CIAA. We decline to consider this belated argument to which Weisfeiler has no opportunity to respond. (*Ford v. Pacific Gas & Electric Co.* (1997) 60 Cal.App.4th 696, 705 ["We need not address arguments raised for the first time in a reply brief"].)

## DISPOSITION

The order denying ByteDance's motion to compel is affirmed. Weisfeiler is entitled to her costs on appeal.

Jackson, P. J.

WE CONCUR:

Simons, J.
Chou, J.

A168006/*Weisfeiler v. ByteDance, Inc.*