Filed 9/23/25  Maldonado v. Faro Services CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HECTOR HERNANDEZ MALDONADO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FARO SERVICES, INC.,<br><br>    Defendant and Appellant. | B334726<br><br>(Los Angeles County Super. Ct. No. 23STCV08920) |

APPEAL from an order of the Superior Court of Los Angeles County, Stuart M. Rice, Judge.  Affirmed.

Boutin Jones, Inc., Bruce M. Timm, Kimberly A. Lucia, Andrew M. Ducart, and Rachel D. Busch for Defendant and Appellant.

The Nourmand Law Firm, Michael Nourmand, and James A. De Sario; Solouki & Savoy, Grant Joseph Savoy, and Shoham J. Solouki for Plaintiff and Respondent.

Plaintiff and respondent Hector Hernandez Maldonado (Maldonado) filed a wage and hour class action complaint against his former employer, defendant and appellant FARO Services Inc. (FARO). FARO then petitioned to compel arbitration, and Maldonado opposed the petition on two grounds: because the arbitration agreement, which he could not read and which was presented to him after he was already represented by counsel, had been procured by FARO's fraud and because he was a transportation worker exempt from arbitration under the Federal Arbitration Act. The trial court held an evidentiary hearing and agreed with Maldonado's first argument (never reaching the second), finding fraud in the execution of the arbitration agreement and refusing to enforce it. We consider whether there is no proper evidentiary basis for the trial court's finding of fraud in the execution of the arbitration agreement.

## I. BACKGROUND

### A. *FARO and Maldonado*

FARO is a logistics company that provides warehousing and fulfillment services, supply chain management solutions, and freight management services in multiple locations throughout the United States. One of its facilities is in Rancho Cucamonga, California.

Maldonado started working for FARO in early 2013. He filed a class action lawsuit against FARO in April 2023, and after an amendment, the operative complaint asserted eleven causes of action on behalf of Maldonado and similarly situated employees for violation of various provisions of the California Labor Code.

2

FARO filed a petition to compel arbitration under the Federal Arbitration Act (FAA) and submitted a declaration from Chad Reed (Reed), FARO's Vice President of Operations, in support of the petition.  Reed declared he was responsible for management and oversight of FARO's operations out of the Rancho Cucamonga warehouse, including management of the FARO employees who work there.  According to Reed, Maldonado worked as a "General Laborer" sorting and stacking plastic trays onto pallets, and his role did not involve driving or loading cargo on or off vehicles.  Maldonado worked in that position from at least January 2020 to approximately July 2022, when he was reassigned as a security guard following an injury.

Reed claimed he met with Maldonado on August 25, 2022, and provided him with English and Spanish language versions of FARO's arbitration agreement.  According to Reed, he reviewed the terms of the arbitration agreement with Maldonado using the assistance of a Spanish-speaking employee.  Maldonado told Reed he wanted to take the agreement home to consider it, Reed told Maldonado that was fine, and the following day, Maldonado provided Reed with a signed copy of the English version of the arbitration agreement, which Reed then signed on FARO's behalf.

Attached to Reed's declaration were unsigned versions of the arbitration agreement in both English and Spanish and a copy of the English agreement Maldonado had ostensibly signed. The signature, however, appears above the "employer" signature line, and Reed's signature and title appear over that area as well;

3

the space above the designated "employee" signature area is blank. The signed agreement is dated August 26, 2022.

Substantively, the arbitration agreement provides FARO and the employee signing the agreement would arbitrate any claims "arising out of or related to [their] employment," waived the employee's right to bring a class action, and waived the employee's right to bring a representative action under the Private Attorneys General Act. The waiver excluded, however, petitions for judicial review of decisions issued after certain administrative hearings, such as hearings before the Workers' Compensation Appeals Board.

### 2. Maldonado's opposition and declaration

Maldonado opposed the petition and submitted his own declaration, which relates a markedly different version of events.

Maldonado declared he has a basic understanding of the Spanish language and can read and write basic Spanish words. He does not know how to read or write English very well. He started working at FARO in January 2013. Until he suffered a work-related injury, he spent 80-90 percent of his time unloading and loading trucks using a forklift or pallet jack. Among other things, Maldonado also labeled boxes, stacked and wrapped pallets, fulfilled orders, and wrapped rugs in plastic for Amazon.

Maldonado denied ever meeting with Reed and a translator. He did not know what the word "arbitration" meant until his attorneys explained it to him. He expressed surprise FARO possessed a document asking him to give up his right to sue FARO in court. Maldonado's attorneys showed him the signed arbitration agreement and told him Reed and FARO claimed Maldonado signed it. Maldonado could not read the

4

document, but upon examining it he said the signature—but not the date on the document—looked like it was his handwriting.

Maldonado could not recall how his signature ended up on the document. He did recall, however, that from time to time during his employment at FARO a Spanish speaking employee would approach him while he was performing his job duties and ask him to sign documents. If the document was in English, Maldonado would say he could not read it and ask if the employee could explain it to him or if he could take it home to have a family member translate it. The employee would decline, tell Maldonado he needed to sign the document to continue working, and suggest Maldonado not worry so much. Maldonado would also ask if the document said he was resigning, but the employee would laugh and say no, Maldonado just needed to sign it. Maldonado signed documents as asked because he trusted what he was being told and needed the job to pay his bills.

Maldonado's attorney, Michael Nourmand (Nourmand) also submitted a declaration with the opposition to the petition to compel arbitration. According to Nourmand, when he began representing Maldonado, his office requested Maldonado's personnel file from FARO. The file FARO delivered, however, did not include a copy of the arbitration agreement. Nourmand asked why an arbitration agreement was not in the file, and FARO's attorney said the agreement had been signed *after* FARO received Nourmand's request for Maldonado's personnel file—and in anticipation that Maldonado would commence litigation against FARO.

Maldonado's opposition brief argued the arbitration agreement was procured by fraud because FARO knew he could not read English, and, contrary to Reed's assertions, FARO would

5

not allow Maldonado to take documents home to have them translated. Maldonado explained he relied on FARO's representations that he just needed to sign the documents they presented to him so he could continue working. Maldonado further argued the FAA did not apply to him because he was a "transportation worker" who was "actually engaged in the movement of goods in interstate commerce."

## C.     The Evidentiary Hearing

The trial court held an evidentiary hearing to decide whether there had been fraud in procuring the arbitration agreement. The court's order scheduling the hearing stated Reed and Maldonado's declarations would "serv[e] as their direct testimony," and both were cross-examined at the hearing.

### 1.     Reed's testimony

Reed testified he first met Maldonado when Reed started working at the Rancho Cucamonga location in January 2020. Maldonado sustained a work-related injury in April or May 2022. Reed created a job description for the job Maldonado performed prior to his injury at the behest of FARO's worker's compensation insurance company.

Reed met with Maldonado on August 25, 2022, in Reed's office because FARO had decided to have all employees complete an arbitration agreement. Reed met with Maldonado directly rather than transmitting the agreement through a supervisor because there had been some miscommunications earlier in the year and they agreed any future communications would come straight from Reed. An employee, Zuleika Aguilera, was also present to translate. Reed testified he did not know if Maldonado

6

could read in English or Spanish, and did not ask him if he could read Spanish; Reed did know that Maldonado signed a document in English approving his hours each week.

The "very quick" meeting between Reed and Maldonado lasted two to three minutes. Reed gave Maldonado the Spanish version of the agreement. Reed had the English version and briefly went over the agreement with Maldonado. He did not read it to him word for word and described the agreement as saying that if FARO and Maldonado "got into an argument or anything similar" that "there would be a meeting at a time and a place to discuss." Reed acknowledged he did not tell Maldonado that by signing the agreement he would be waiving his right to a jury trial if a dispute arose. But Reed maintained he told Maldonado he should read the agreement before signing it.

On the following day, Maldonado gave Reed a signed copy of the arbitration agreement he took home when Reed asked him for it. Reed looked at the agreement quickly to ascertain it was signed and then went back to his office. When asked if he was surprised that Maldonado signed the English version of the agreement, Reed responded that he was surprised Maldonado signed it at all because about half the people in the warehouse did not. Reed testified he was not aware Maldonado asked for his personnel file in May 2022, but Reed acknowledged Maldonado was the only employee Reed met with privately to discuss signing the agreement.

### 2. *Maldonado*

Maldonado testified he never spoke to Reed during his employment with FARO. He did not know an employee named Zuleika Aguilera, nor anyone with the last name Aguilera who

translated documents or conversations for him at any time during his employment. Maldonado affirmed the statement in his declaration that from time to time during his employment a Spanish speaking employee would approach him and ask him to sign certain papers in English. He could not describe the documents he signed, however, and he never took them home.

When presented with the signed arbitration agreement, Maldonado stated the signature on the line appeared to be his, but he did not know how it got there. He denied ever seeing the arbitration agreement.

Maldonado testified he retained an attorney in May 2022. When asked if any documents were presented to him for his signature at work in 2022, Maldonado said yes. He could not recall precisely how often that occurred, but he thought it could have been every month or every other month. When asked if he ever signed any of the documents he was presented with in 2022, Maldonado gave conflicting answers.[1]

### D. The Trial Court's Ruling That the Agreement Was Procured by Fraud and Should Not Be Enforced

The trial court issued a written ruling denying the petition to compel arbitration. The court recognized the parties had presented two entirely conflicting accounts of how the arbitration agreement came to be signed, which required the court to weigh the evidence. The court expressly found FARO's account not

---

[1] At first, Maldonado said he could not recall signing any documents in 2022. When asked if he ever refused to sign any of the documents, he said no, because he never saw them. When asked again if he refused to sign any documents in 2022, he first said no, because he never saw them, but then said yes he did.

8

credible.  Elaborating, the trial court highlighted various aspects of FARO's position that it believed were problematic.  The court found it belied credulity that Maldonado, who was represented by counsel at the time, would take both the Spanish and English versions of the arbitration agreement home but not consult with his attorney before signing the agreement.  The court additionally faulted FARO for never explaining how or why Maldonado—a Spanish speaker—opted to sign the English version of the arbitration agreement and did so in the space for the employer to sign.  Further, the court found it "simply not believable" that a person who had already engaged counsel and would ultimately direct counsel to file a lawsuit in court would nonetheless waive the right to do so, along with other rights, and not seek counsel's involvement.

In comparison, the trial court found credible Maldonado's contention that he was approached from time to time to sign documents he could not understand but that he was told he needed to sign to continue working.  The court also found Maldonado's version of events was supported by his inability to recognize the handwritten date on the agreement.  The court acknowledged it is generally not reasonable to fail to read a contract, but it also stated that where a person signs an agreement containing an arbitration clause in a language they do not understand and the arbitration clause is not described to them, the agreement can be found to involve fraud in the execution—citing a 2021 Court of Appeal decision it believed to be factually analogous (*Najarro v. Superior Court* (2021) 70 Cal.App.5th 871).

9

## II.  DISCUSSION

Substantial evidence supports the trial court's factual findings, and the court accordingly did not err in denying FARO's petition to compel arbitration.  Maldonado and Reed presented two irreconcilable narratives regarding how the arbitration agreement came to have Maldonado's signature on it, and the trial court credited Maldonado's account: that he could not read English very well, told the Spanish speaking employees who periodically presented him with documents for his signature that he could not understand them, and was denied an explanation of the documents other than a representation that signing them was necessary to keep working and he should not worry so much. So credited, that is sufficient to justify the trial court's fraud in the execution finding and its refusal to enforce the arbitration agreement.

### A.     *Standard of Review*

On a petition to compel arbitration, the trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence to determine whether the parties agreed to arbitrate.  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)  As FARO recognizes, "[w]here, as here, a trial court's decision on arbitrability is based on a decision of fact, . . . this Court applies . . . [the] substantial evidence standard [of review]."  (See, e.g., *Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 966.)  "[W]e presume the court found every fact and drew every permissible inference necessary to support its judgment or order, and we defer to the court's determination of credibility of the witnesses and weight of the evidence in resolving disputed facts."  (*Cohen v. TNP 2008*

10

*Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 859.)

> B.     *Substantial Evidence Supports the Trial Court's*
>        *Fraud in the Execution Finding*

Fraud in the execution of an agreement ""goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is *void*.""" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415.)  To establish fraud in the execution, a plaintiff must show their signature on a contract "is negated by fraud so fundamental that they were deceived as to the basic character of the documents they signed and had no reasonable opportunity to learn the truth."  (*Id.* at 425.)  While misrepresentations as to the nature or character of an agreement will not establish fraud in the execution if the party disputing the agreement had a "reasonable opportunity to discover the real terms of the contract" (*id.* at 419-420; *Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 958-959), a party's "limited ability to understand English" and the counterparty's inaccurate recital of the character or essential terms of a contract can suffice to establish fraud in the execution of an agreement.  (*Rosenthal, supra,* at 428; see also *Najarro, supra,* 70 Cal.App.5th at 886.)

The trial court disbelieved Reed's (and thus FARO's) account of the execution of the arbitration agreement and opted to believe Maldonado's instead, even though it found his testimony somewhat vague.  We accord deference to this credibility finding, especially as it came after the court heard live

11

testimony, and Maldonado's credited testimony provides substantial evidence to support the court's finding of fraud in the execution.

Based on the agreement and the circumstances as Maldonado described them, the trial court had an adequate basis to find the arbitration agreement was one of the various documents FARO employees periodically told Maldonado to sign to keep working at the company. Maldonado's testimony established he was deceived as to the nature of the arbitration agreement since he could not read it and the employee who told him to sign it refused to explain it, he was prevented from taking the document home for translation and thereby discovering the nature of the document, and he reasonably relied on the employee who told him not to worry about the document and said he needed to sign it to keep working.[2] (*Najarro, supra,* 70 Cal.App.5th at 887 [plaintiff adequately established fraud in the execution where plaintiff could not read English or Spanish, was told the arbitration agreement was unimportant, was pressured

---

[2] While Maldonado's account alone adequately establishes FARO's misrepresentation of the nature of the agreement, considering FARO's own evidence would only reinforce the conclusion that the document was misrepresented. Reed did not explain that, by signing the document, Maldonado (a represented party) would be giving up his right to sue FARO in court. Reed's only description of the agreement to Maldonado was his statement that the agreement provided "there would be a meeting at a time and a place to discuss" if an argument or something similar arose. Perhaps that rather vague description might suffice as a poor description of mediation, but it is grossly inadequate—and a misrepresentation—when it comes to describing what arbitration is.

12

to sign the documents, and did not receive an explanation of the documents after stating she could not understand them].) FARO contends *Najarro* is distinguishable because the plaintiffs there provided undisputed evidence the defendant's representatives knew they could not read English or Spanish. The trial court here, however, could draw an inference of the same knowledge when Reed, by his own account, met with Maldonado with a translator, provided Spanish and English versions of the arbitration agreement, and Maldonado signed the English language agreement in the wrong place.

FARO advances a procedural counterargument, but it is unpersuasive. The company argues the trial court's order is infirm because the court did not expressly find FARO made a misrepresentation regarding the arbitration agreement. Even assuming for the sake of argument that the trial court's ruling does not encompass such a finding, we would imply such a finding anyway. (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 237 [doctrine of implied findings applies to order denying motion to compel arbitration where neither party requested statement of decision].)

More substantively, FARO argues any alleged misrepresentation it made was not actionable, relying on *Rosenthal*, *supra*, 14 Cal.4th at page 424 for the proposition that statements regarding a written contract, "even if falsely and fraudulently made, do not void [the] contract, because it is generally unreasonable, in reliance on such assurances, to neglect to read a written agreement before signing it." (*Ibid.*) In support of its argument, FARO focuses only on Maldonado's testimony on cross-examination at the evidentiary hearing. But Maldonado's declaration establishes he did not simply rely on the

13

representation without trying to ascertain the nature of the agreement.  He tried to do so by informing the employee who brought the agreement to him that he could not read it, asking the employee to explain it to him, and asking to take the document home.

Relatedly, FARO contends Maldonado's purported reliance on the company's misrepresentation of the nature of the document was unreasonable.  But considering Maldonado's testimony as a whole, there is substantial evidence Maldonado reasonably relied on the employee who told him not to worry too much about signing any of the documents and said he needed to sign the documents to keep working.  Maldonado had worked at FARO for many years by the time he was told to sign the document that turned out to be the arbitration agreement, and this was not the first time such an interaction occurred.  There is no indication the prior documents impacted his rights or his work in any negative way (as demonstrated by his continued employment), and this would lull him into believing the repeated (mis)representation could be trusted.

DISPOSITION

The order denying the petition to compel arbitration is affirmed.  Maldonado is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.


We concur:



MOOR, J.



KIM (D.), J.


15