Filed 10/20/25  Xing v. Winn Inc. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LINGYAN XING,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>WINN INC.,<br><br>    Defendant and Appellant. | G063980<br><br>(Super. Ct. No. 30-2023-01336762)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Lon F. Hurwitz, Judge. Affirmed.

Gordon Rees Scully Mansukhani, Matthew G. Kleiner and Andrea K. Williams for Defendant and Appellant.

Rastegar Law Group, Farzad Rastegar and Thomas S. Campbell for Plaintiff and Respondent.

Lingyan Xing filed a putative wage and hour class action against her former employer, Winn Incorporated (erroneously sued as Winn, Inc.), which in turn filed a motion to compel arbitration and dismiss the class claims. The trial court denied the motion, finding the parties' arbitration agreement is procedurally and substantively unconscionable. We agree the agreement is unconscionable, though for slightly different reasons than the trial court, and therefore affirm the order.[1]

FACTS

Winn manufactures and sells polymer grips for golf clubs and other items. Xing worked for Winn as an hourly, non-exempt employee from November 2021 to March 2022.

Before she started work, Xing was given a number of onboarding documents to sign, including a four-page arbitration agreement. The agreement provides that any claims or controversies between Xing and Winn, including claims for wages or statutory violations, must be resolved by arbitration, but it expressly excludes "claims by Winn for injunctive relief and/or unauthorized disclosure of trade secrets or confidential information." The agreement enables the arbitrator to award any remedies or relief provided for under the substantive law governing the arbitrated claims, and it specifies that the parties will be responsible for their own attorney fees and for the costs of arbitration. It also includes a severability clause.

---

[1] In light of this holding, we need not reach other issues raised on appeal, such as whether the Federal Arbitration Act applies or whether certain elements of contract formation were lacking. Notably, regardless of whether the agreement is governed by the FAA, the general law of unconscionability still applies. (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 518 (*Ramirez*).)

Xing signed the arbitration agreement twice—once using her Americanized name and a second time using her legal name—and she did not ask any questions about it. The agreement contains a recital that Xing signed the agreement "voluntarily" and "had a reasonable period of time to review and consider th[e] agreement" and discuss it with her attorney (capitalization omitted). However, no one at Winn verbally explained the agreement's terms or significance, and the record is silent as to how much time Xing was actually given to review the document.[2] According to Xing, she understood she needed to sign the agreement to be hired, and she was never told she could negotiate its terms or refuse to sign it. Xing began work for Winn the day after she executed the agreement.

In 2023, Xing filed a putative class action against Winn, asserting various wage and hour claims such as meal and rest break violations, failure to pay minimum wages and overtime, failure to provide accurate wage statements, and failure to timely pay final wages at termination.

Winn filed a motion to compel arbitration of Xing's individual claims and to dismiss her class claims. It asserted the FAA applies and that Xing's class claims must be dismissed under *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, because the arbitration agreement does not expressly permit class arbitration. Winn further asked

_____

[2] Brinskley Lai was the assistant who conducted Xing's initial onboarding. The record does not include a declaration from her, so it is unclear what, if anything, she said to Xing during that meeting or how much time she gave Xing to review the onboarding documents. And Ray Wu, the Winn accounting manager who subsequently asked Xing to re-sign the agreement using her legal name, does not specify in his declaration how much time, if any, he gave Xing to reread the documents.

the trial court to sever the agreement's provision on attorney fees and costs and enforce the remainder of the agreement as to Xing's individual claims.

Xing opposed the motion, asserting the arbitration agreement is substantively and procedurally unconscionable. Among other things, she contended the agreement lacks mutuality and denies her the right to recover attorney fees and costs.

The trial court denied Winn's motion in a comprehensive nine-page order. The court first expressed doubt about whether the Winn signatory actually understood what she was signing, finding "it is not clear if all of the elements of contract formation are present." It then determined that the FAA does not apply and that the arbitration agreement is procedurally and substantively unconscionable.

DISCUSSION

Although "California law strongly favors arbitration," arbitration agreements may be invalidated under generally applicable contract defenses, including unconscionability. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).) "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." (*Ibid.*)

The unconscionability doctrine ""'has both a procedural and a substantive element."' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.'" (*OTO, supra,* 8 Cal.5th at p. 125.)

4

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on "'a sliding scale.'" [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." (*OTO, supra,* 8 Cal.5th at pp. 125–126.)

"'Unconscionability is ultimately a question of law, which we review de novo when no meaningful factual disputes exist as to the evidence.'" (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 445.) "[W]e are not bound by the trial court's rationale [for denying arbitration], and thus may affirm the denial on any correct legal theory supported by the record, even if the theory was not invoked by the trial court." (*Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 655.)

The record here demonstrates moderate procedural unconscionability. Notwithstanding its recital concerning its voluntary nature, the arbitration agreement, like most employment arbitration agreements, is a contract of adhesion—i.e., a standardized contract drafted and imposed by the party of superior bargaining power on a take-it-or-leave-it basis. (*OTO, supra,* 8 Cal.5th at p. 126.) Winn presented the pre-printed agreement to Xing with other employment-related documents, without any explanation about the agreement's significance. And the record is silent as to how much time, if any, Xing was actually given to review the document before being asked to sign it. For her part, Xing believed she needed to sign the document to be hired, and she was never told she could negotiate its terms or refuse to sign it.

5

These circumstances, coupled with the fact that Xing was asked to sign the arbitration agreement before her first day on the job, establish at least some level of oppression. With preemployment arbitration agreements in particular, "'the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment.'" (*OTO, supra,* 8 Cal.5th at p. 127.) The fact Xing did not attempt to negotiate the agreement's terms does not change that analysis. (*Ibid.* ["a complaining party need not show it tried to negotiate standardized contract terms to establish procedural unconscionability"].)[3]

That brings us to whether the agreement is substantively unconscionable—that is, whether its actual terms would create unfair or one-sided results. To that end, our Supreme Court has identified several "minimum requirements for the lawful arbitration of [nonwaivable statutory workplace] rights." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 102 (*Armendariz*).) Among other things, an arbitration agreement must "'provide[ ] for all of the types of relief that would otherwise be available in court, and . . . not require employees to pay . . . any arbitrators' fees or expenses as a condition of access to the arbitration forum."

---

[3] The trial court also found the arbitration agreement procedurally unconscionable because it does not identify which rules would govern the arbitration proceeding. (See *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 244 (*Carbajal*) [agreement that did not identify which set of AAA rules would apply was unconscionable].) But the agreement sufficiently specifies that any "arbitration shall be conducted in accordance with California Code of Civil Procedure sections 1280, et seq." (underscore omitted). (See *Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390, 399–400 [rejecting unconscionability argument where arbitration was "to be governed by the procedures set forth in the [California Arbitration Act]"].)

(*Ibid.*; see *OTO, supra,* 8 Cal.5th at p. 128, fn.9 ["these requirements apply to wage claims].) The agreement must also have a "'modicum of bilaterality.'" (*Armendariz,* at p. 117.) That is, it should not compel the arbitration of claims that would typically be initiated by an employee but exclude claims that would typically be initiated by the employer. (*Ramirez, supra,* 16 Cal.5th at p. 498.)

The arbitration agreement here violates all three of those requirements. To begin with, it does not enable Xing to recover the same relief otherwise available to her in court. If Xing litigated her claims and prevailed in court, she could recover her attorney fees on several of her statutory wage claims. (See, e.g., Lab. Code, §§ 226, subd. (e)(1), 1194, subd. (a).) The arbitration agreement eliminates that right and instead provides that "[t]he parties shall be responsible for their own attorneys' fees." Because that provision "purports to deprive an employee of his or her statutory right to recover attorney fees if the employee prevails on a Labor Code claim," it is "substantively unconscionable." (*Carbajal, supra,* 245 Cal.App.4th at pp. 250–251.) Winn rightly concedes as much.

Further, the agreement requires Xing to share in the cost of the arbitrator's fees, requiring the parties to "be responsible for their own . . . costs for arbitration." This, too, is substantively unconscionable. (*Armendariz, supra*, 24 Cal.4th at p. 102.)

The arbitration agreement also lacks mutuality. It requires the arbitration of a wide range of claims, including claims for unpaid wages, breach of contract, tort, discrimination, and any statutory violation (all of which are typically brought by an employee), but it excludes "claims by Winn for injunctive relief and/or unauthorized disclosure of trade secrets or confidential information." "This lack of mutuality is indicative of substantive

7

unconscionability." (*Ramirez, supra,* 16 Cal.5th at p. 498 [arbitration agreement excluding "claims related to intellectual property rights and . . . noncompete agreements" lacked mutuality because it tended "to exempt claims likely to be made by" the employer]; see *Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1251 [agreement that required arbitration of employment claims but that excluded intellectual property claims was unconscionable].)[4]

Winn asserts the trial court erred by declining to sever the agreement's fees and costs provision. We disagree. "[C]ourts may liberally sever any unconscionable portion of a contract and enforce the rest when: the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; *and* enforcing the balance of the contract would be in the interests of justice." (*Ramirez, supra,* 16 Cal.5th at p. 517.) After finding the arbitration agreement had multiple unconscionable provisions, the trial court declined to sever those terms, reasoning "the broad nature of the procedural and substantive unconscionability precludes such a remedy." We discern no abuse of discretion in that ruling. (See *Ramirez,* at p. 517 ["there are no bright-line numerical rules regarding severance" but "the greater the number of unconscionable provisions a contract contains the less likely it is that severance will be the appropriate remedy"]; see *Carbajal, supra,* 245 Cal.App.4th at p. 254 [arbitration agreement containing "three

---

[4] The trial court found the agreement "does not lack mutuality" because it excludes claims likely to be brought both by the employer (e.g., trade secret disclosure) *and* by the employee (e.g., unemployment compensation benefits and pension benefits). We worry "several of the exclusions for 'employee claims' appear to be illusory. Workers' compensation and unemployment insurance claims are excluded from arbitration by law." (*Ramirez, supra,* 16 Cal.5th at p. 498.)

8

substantively unconscionable terms" was "permeated with unconscionability"].)

Although California law favors arbitration as an efficient means of resolving disputes, courts have an obligation "'to ensure that private arbitration systems resolve disputes not only with speed and economy but also with fairness.'" (*Armendariz, supra*, 24 Cal.4th at p. 115.) Because the arbitration agreement here is both procedurally and substantively unconscionable, Winn's motion to compel arbitration was properly denied.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed. Xing shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

SCOTT, J.

WE CONCUR:

MOORE, ACTING P. J.

GOODING, J.